THE PHELPS & BIGELOW WINDMILL COMPANY v. M.
H. BAKER *et al.*

1. MECHANIC's LIEN — *Who Entitled to.* One who, under contract with
the owner of land, furnishes a windmill and other material, and
erects the same thereon, is entitled to a lien on said land for said im-
provement, by complying with the provisions of the mechanic's lien
law.

2. CLAIM — *Sufficient Verification.* The fact that a notary public, before
whom a claim of lien is verified, fails to add after his official signa-
ture the date of expiration of his commission, does not render such
lien void.

*Error from Elk District Court.*

ACTION by the *Company* against *Baker* and three others,
to enforce a mechanic's lien. On a judgment for defendants,
at the October term, 1889, the plaintiff company brings error.

*L. Scott,* for plaintiff in error:

There are but two questions in controversy in this action:
First, does § 630 of the code (Comp. Laws of 1885, ¶ 4447)
include within its provisions furnishing material, machinery,
and performance of the necessary labor in the erection of
such an improvement on lands, and create a lien? Second, does
the omission of the notary public, in not attaching to or after
his official signature the date of the expiration of his com-
mission, invalidate the affidavit to the lien, and thereby make
the same void?

The supreme court of Nebraska decided the first question
in controversy, under a statute almost identical with said § 630,
in a recent case, *Phelps & Bigelow Windmill Co. v. Shay,* 48
N. W. Rep. 961, in which the court held that the furnishing
material, machinery and performance of the necessary labor
in making such an improvement was within the statutory pro-
vision, and the same was also a lien on the lands. See, also,
*Meriden v. English,* 22 Pac. Rep. 453; *Lumber Co. v. Water
Co.,* 29 Pac. Rep. 476; 48 Kas. 182, 187. The statute uses
the language, "perform labor or furnish material for erecting,

altering or repairing any building or the appurtenances of any building or any erection or improvement." Now, it is within the knowledge of every person that the water supply to railroads, manufactories and a vast number of industries is done by means of windmills. Even cities and towns derive their water supplies from that source, and will it be said that a windmill that supplies water for such purposes is not an improvement? Clearly not. The farmer or stock raiser who desires to convey water through and into different portions of his farm is enabled to do so by aid of the windmill, and thereby increase the value of his lands in many ways, besides the convenience which it affords him; so that the improvement greatly increases the value and use of his lands, and is a great saving in time and labor to him. It is just as useful to him in his business as it is to the railroads and other industries in their business, and there is no good reason why such an erection and improvement is not within the letter and spirit of the statute.

As to the second proposition, that the notary failed to attach after his official signature the date of the expiration of his commission, see *City of Kingman v. Berry*, 40 Kas. 628 : "The important consideration is, whether the complaint was actually sworn to before a proper officer. The mere fact that an officer fails to couple his official title with his name in signing a jurat, or to attach a jurat at all to the affidavit, at the time the oath is administered, will not invalidate it. The officer may attach a jurat or his official signature thereto at a later time, when the affidavit would be held sufficient."

*Douthitt & Ayres*, for defendant in error A. T. Bush :

The failure of the notary to add to his official signature the date of the expiration of his commission destroys the lien. The party interested is required to file a verified statement in order to create a lien, and we know that the statement has been verified only by the certificate of the officer taking such verification. If, then, the certificate is defective, we think that filing a statement with such defective certificate would

create no lien until the same was amended so as to conform to law.   This is purely a statutory proceeding, and those who would create and enforce mechanics' liens must proceed according to the statute.  *Perry v. Conroy*, 22 Kas. 716.

We apprehend that the question of whether the party who furnishes material and erects a windmill may have a lien upon the land on which the same is erected, by virtue of the mechanic's lien laws, depends wholly upon the manner in which such mill is erected.   The law, according to the general authorities, seems to be that such a lien can be had for the construction or erection of only those things which, after being so constructed or made, become a part of the realty; and if a windmill is so attached to a house or building as to become a part of same or a part of the realty, it may be that a mechanic's lien would attach to the property for the erection of same.   But we think it would be quite different as to windmills and other useful appliances that might be erected out in the fields, separate and apart from all buildings, which are probably intended to be removed at times from place to place, are not permanently connected with the realty, and in fact are no more a part of the realty than the wagons and machinery used in operating the farm.  15 Am. & Eng. Encyc. of Law, p. 6; 2 Jones, Liens, §§ 1336, 1341.   See, also, *Comm'rs of Brown Co. v. Roberts*, 22 Kas. 762; 45 Mo. 100; 52 id. 452; 56 id. 28; 59 id. 452; 63 id. 585.

Opinion by STRANG, C.: Action on two promissory notes, and to foreclose a lien on real estate.   October 17, 1889, the case was tried by the court, a jury being waived, which made the following findings of fact and conclusions of law:

"1. On the 14th day of March, 1887, and prior thereto, the defendant M. H. Baker was the legal and equitable owner of the following-described lands in Elk county, Kansas, to wit: The northwest quarter of the southwest quarter of section 17, and the north half of the northeast quarter of section 18, and the southeast quarter of section 7, and the southwest quarter of section 8, all being in township 29 south, of range 12 east; that on said 14th day of March, 1887, the

defendant M. H. Baker contracted with the plaintiff to put in and upon said above-described lands certain improvements, a windmill and attachments therefor, and do certain labor in and about putting in said windmill on said lands, and furnishing the material and machinery therefor; that in pursuance of said contract and agreement the plaintiff, the Phelps & Bigelow Windmill Company, a corporation, furnished the material, machinery, and fixtures, and performed the labor in and erected a windmill on the lands above described, and fully completed the same on the 18th day of April, 1887. The defendant M. H. Baker executed and delivered to the plaintiff, as part consideration for such improvement made by the plaintiff as aforesaid, the two promissory notes described in plaintiff's petition, and the said notes are due and unpaid.

"2. Thereafter, on the 1st of June, 1887, the defendant Baker and wife conveyed the lands aforesaid to the defendant A. T. Bush, which deed was duly recorded in the office of the register of deeds in Elk county, Kansas, on the 29th day of June, 1887.

"3. On the 5th day of July, 1887, the plaintiff filed its lien in the office of the clerk of the district court of Elk county, Kansas, a true copy of which is attached to the plaintiff's petition; and that said lien was filed within three months from the furnishing of said material, machinery and fixtures and improvements, and performing the necessary labor in erecting the windmill upon the lands above described, by plaintiff, for defendant Baker.

"4. The court further finds, that said material, machinery, and fixtures, and the labor done and performed by the plaintiff in the erection and completion of said windmill, is not such improvements as is contemplated and provided for by the mechanic's lien laws of the state of Kansas, and, therefore, form no lien on said lands, and that by reason thereof the defendant A. T. Bush took said lands free from all claims; to which last finding the plaintiff at the time excepted and excepts.

"5. The court further finds, that the defendants and each of them have been served with summons as provided for by law in the state of Kansas, and that there is due the plaintiff from the defendant M. H. Baker the sum of $356.15 on the notes set out, and that said notes bear interest, at the rate of 10 per cent., from maturity until paid. The court further finds, that the notary public before whom the plaintiff at-

tempted to verify his statement for the mechanic's lien failed
to add to his official signature the date of the expiration of
his commission as such notary public; that for said reason the
aforesaid attempted mechanic's lien 'is void as to A. T. Bush.
[To which finding the plaintiff excepts.]

"It is, therefore, considered, ordered and adjudged by the
court, that the plaintiff, the Phelps & Bigelow Windmill Co.,
have and recover of and from the said defendant M. H.
Baker the sum of $356.15, and that the judgment draw 10
per cent. interest from date; and it is further ordered and ad-
judged by the court, that the defendant A. T. Bush recover
his costs herein, taxed at $22.65; to which further finding of
fact and judgment of the court the plaintiff at the time ex-
cepted and excepts."

Upon the above findings and conclusions, judgment was
rendered in favor of the plaintiff against Baker for the amount
of the notes.   But the court refused a judgment foreclosing
the lien, and gave judgment for A. T. Bush, owner of the
land, for his costs.   Motion for new trial was overruled, and
the case brought up for review.

The first matter discussed by the defendant in error in his
brief is the objection to the consideration of the case by this
court, for the reason that all the parties in the case in the court
below are not made parties in this court.   The plaintiff in its
petition alleged that W. C. Newcomb and A. L. Bush claimed
some interest in the land described in the petition, the extent
and character of which was unknown, but which it was al-
leged was inferior to the rights of the plaintiff therein.   Nei-
ther of such defendants answered, nor in any way appeared
in the case in the court below.   Having been properly served
and not appearing, it is presumed that the court found that
they had no interest in the land upon which the plaintiff
claimed a lien, and this presumption is sustained by the
court's conclusion of law that "A. T. Bush took the lands
free from all claims."   If the said defendants were found to
have no interest in the lands they are not necessary parties
here, and there is no objection to the consideration of the case
because they are not parties in this court. (*National Bank v.
Ridenour*, 46 Kas. 707, 718; 27 Pac. Rep. 150.)

Two questions on the merits of the case challenge the attention of the court here. The improvement for which a lien was claimed in this case was made while § 630 of the code, ¶ 4447 of the Compiled Laws of 1885, was in force. The language of said section, so far as material in this case, reads as follows:

"Any mechanic, or other person, who shall, under contract with the owner of any tract or piece of land, his agent or trustee, or under contract with the husband or wife of such owner, perform labor or furnish material for erecting, altering or repairing any building, or any erection or improvement, or shall furnish or perform labor in putting up any fixtures or machinery in or attached to any such building or improvements — shall have a lien," etc.

Is the plaintiff entitled under this section to a lien upon the land upon which it was erected, for furnishing the machinery and other material and erecting a windmill for use on said land in raising water for stock and other farm purposes? We think an improvement of the kind for which the lien is claimed in this case is within the statute. It certainly is an improvement erected upon the lands, and as useful and valuable as many other improvements, such as fences for restraining stock, corn cribs for storage of corn, and granaries for the safe-keeping of grain, which are admittedly within the statute. Windmills are sometimes placed upon the top of some of the farm buildings, but are more generally placed upon a derrick, or tower, to which they are fastened, the derrick, or tower, at the same time being securely bolted to posts that are let into the ground to a depth sufficient to hold firmly in place the tower and windmill, so that the tower and mill are as firmly attached to the soil as a corn house, granary or other building erected on posts let into the ground. It is also an improvement that adds largely to the value of the land, by enabling the owner thereof to secure and distribute a supply of water for stock, thus adding to the value of the land for grazing purposes. The principle upon which a lien is given

for improvements upon land is that it adds to the value thereof. The plaintiff erected this improvement upon the land while it was owned by the defendant Baker, who afterwards sold the premises to Bush. Is there any doubt but that the mill passed to Bush as a part of the realty when the land was conveyed to him, and without any reference thereto in the descriptive part of the deed? We think not. The supreme court of Nebraska, under a statute quite like ours, held that the windmill, with tank, pump, etc., "constitutes an appurtenance," and was thus within the Nebraska statute. See, also, the case of *Lumber Co. v. Water Co.*, 48 Kas. 182, 187, and cases there cited; 29 Pac. Rep. 476.

In the absence of any agreement that the mill and other necessary material employed in its erection shall remain personal property when erected upon the land and attached thereto, it becomes an improvement or appurtenance, within the meaning of our statute, for which a lien may be had thereon if the proper steps are taken in time to secure it.

The court below found as a fact that the notary public before whom the affidavit verifying the lien was made failed to state after his official signature the time when his commission would expire, and upon such finding the court held, as a matter of law, the lien was void. We do not think such omission on on the part of the notary renders the lien void. The statute requiring such addition on part of the notary does not attempt to avoid the affidavit taken by the notary on account of such omission. It simply subjects the notary to a penalty therefor. The omitted matter constitutes no part of the affidavit, nor of the jurat thereto. It is a statutory requirement to be observed by the notary for the purpose of making the instrument show that the notary taking the affidavit is still in commission and with power to do so.

The cases cited from the Missouri reports by the defendant in error do not seem to be applicable. Our statute is broader than the Missouri statute, and the cases cited mostly refer to improvements upon leasehold property.

We think the court erred in its conclusions of law, and recommend that the judgment thereof be reversed.

By the Court: It is so ordered.

All the Justices concurring.