## DAVIS v. MOFFETT.

No. 2938. Opinion Filed November 24, 1914.

(144 Pac. 607.)

1. **MORTGAGES — Foreclosure—Petition—Requisites.** In an action to foreclose a mortgage, it is not necessary for the plaintiff, in his petition, to set forth with particularity the character of title held by an adverse party in the mortgaged premises.

2. **INDIANS—Indian Lands—Oil and Gas Lease—Mortgage—Approval by Secretary of Interior.** Under the act of Congress of March 3, 1905, c. 1479, 33 St. at L. 1061, the approval of the Secretary of the Interior was not necessary to the validity of a mortgage of an oil and gas lease in the Osage Nation.

3. **SAME — Lands — Mortgages — Foreclosure—Petition—Sufficiency.** Petition examined, and held to state a cause of action.

(Syllabus by the Court.)

*Error from District Court, Osage County;*
*R. H. Hudson, Judge.*

Action by George M. Davis, trustee, against James S. Moffett. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

*Veasey & Rowland* and *J. H. Brennan,* for plaintiff in error.

*James B. Diggs, Henry McGraw, F. C. Proctor,* and *D. Edward Greer,* for defendant in error.

LOOFBOURROW, J. This is an action to foreclose a mortgage. The defendant, J. S. Moffett, filed a general demurrer to the amended petition of the plaintiff; the same being sustained by the trial court, plaintiff elected to stand thereon, and judgment was entered dismissing the petition, and from that judgment plaintiff appeals.

The petition alleges, in part: That on the 16th day of March, 1896, the Osage Indian Tribe, through its council, executed and delivered to Edwin B. Foster and assigns a lease of the Osage Indian Reservation for mining purposes, viz., the production of petroleum and natural gas, for a period of ten years, upon the

terms and conditions recommended by the Indian agent in charge of such reservation, and said lease was immediately approved by the Secretary of the Interior. Copy of the lease is attached to the petition. Said lease was duly assigned to the Phoenix Oil Company, a corporation, and in January, 1902, the Phoenix Oil Company assigned and transferred the said lease to the Indian Territory Illuminating Oil Company. That in September, 1903, the Indian Territory Illuminating Oil Company executed a sublease to one L. J. Greulich to a portion of said reservation, containing 24,240 acres. Copy of this lease is attached to and made a part of the petition. In May, 1904, Greulich executed and delivered to the Philadelphia-Osage Oil Company a portion of the leased territory by him held, containing 5,120 acres, more or less. That on March 3, 1905, Congress of the United States extended said sublease for a period of ten years more from the 16th day of March, 1906, and that that portion of said act applicable to the lease and sublease in controversy is as follows, viz.:

"That any allotment which may be made of the Osage Reservation, in Oklahoma Territory, shall be made subject to the terms and conditions of the lease herein authorized, the same being a renewal as to a part of the premises covered by a certain lease dated March 16, 1896, given by the Osage Nation of Indians to Edwin B. Foster, and approved by the Secretary of the Interior and now owned by the Indian Territory Illuminating Oil Company under assignments approved by the Secretary of the Interior, which said leases and all subleases thereof, duly executed on or before December 31, 1904, or executed after that date, based upon contracts made prior thereof and which have been or shall be approved by the Secretary of the Interior to the extent of 680,000 acres in the aggregate, are hereby extended for a period of ten years from the 16th day of March, 1906, with all the conditions of said original lease, except that from and after the 16th day of March, 1906, the royalty to be paid on gas shall be $100 per annum on each gas well instead of $50 as now provided in said lease; and except that the President of the United States shall determine the amount of royalty to be paid for oil. Such determination shall be evidenced by filing with the Secretary of the Interior, on or before the 31st day of December, 1905, such deter-

mination; and the Secretary of the Interior shall immediately mail to the Indian Territory Illuminating Oil Company and each sub-lessee a copy thereof."

That in July, 1905, the Philadelphia-Osage Oil Company made, executed, and delivered to the plaintiff, as trustee, and subsequently sold to various firms or corporations, 30 bonds, each in the sum of $500, dated July 1, 1905, etc., and that about the same time, in order to secure the payment of the bonds, made, executed, and delivered to plaintiff a certain mortgage, copy of same being attached to and made a part of the petition. Said mortgage was recorded in the office of the register of deeds of Pawnee county, Okla., on the 9th day of August, 1905, etc., the mortgage being upon said lease of 5,120 acres of land located in the Osage Indian Reservation. Plaintiff alleges breach of the conditions of the mortgage, failure to pay the bonds or the interest thereon; alleges that the proceeds of said bonds secured by said mortgage were expended upon said lease in the development thereof, etc. Plaintiff further represents that the defendant Philadelphia-Osage Oil Company has heretofore been placed in the hands of a receiver in an action pending in the state of Delaware, and under ancillary receivership in the territory of Oklahoma, T. S. Saunders, as ancillary receiver, under order of court, has sold and transferred the property covered by the mortgage above set forth unto the defendant J. S. Moffett. That said defendant J. S. Moffett holds an interest in and to said lands by virtue of such transfer, but took the same with constructive and actual notice of the existence of said mortgage. That said J. S. Moffett is a proper party defendant in this action. And plaintiff prays for a judgment against the Philadelphia-Osage Oil Company in the sum of $15,000, together with the interest thereon, for $1,500 attorney fees, all costs and a foreclosure of all equity of redemption in and to said property, a sale of the same, and a proper application of the proceeds thereof.

The demurrer to the petition was general, that is, that said petition does not state facts sufficient to constitute a cause of action in favor of plaintiff and against this defendant. The de-

fendant Moffett insists that the petition does not state a cause
of action for the following reasons:

"First. It does not show a cause of action in that it fails
to show the courts therein mentioned had jurisdiction to appoint
receivers, or that the trustee was not a party to such proceed-
ings and bound thereby, nor that the courts appointing such
receivers were courts of record, or of general jurisdiction. .

"Second. It does not state facts sufficient to constitute a
cause of action in that it fails to show or state that the re-
ceiver's sale attempted to be set out therein was approved or
confirmed by the court.

"Third. It does not state a cause of action in that it fails
to show or state that the claim of interest or ownership of
James S. Moffett in the leases set out is subject to that of
plaintiff.

"Fourth. It does not state a cause of action in that it
shows if the receiver's sale is good, the mortgage is invalid as
to the creditors, and James S. Moffett, standing in their shoes,
can raise such question.

"Fifth. It does not state a cause of action in that it fails
to show the mortgage was approved by the Secretary of the
Interior."

Under the first contention of defendant in error numerous
authorities are cited in his brief to the effect that in suing on a
judgment it is necessary to allege, in some form, facts which show
that the court rendering the judgment had jurisdiction both of
the subject-matter and of the person of the defendant; that in
pleading the judgment of courts of limited jurisdiction it is
necessary to state the facts upon which the jurisdiction of such
court is founded, but with respect to courts of general jurisdic-
tion such averments are not necessary. The authorities cited
no doubt state the law, but they are not applicable to this case
for the reason that the plaintiff in error is not relying upon the
title obtained through the receiver; he is not pleading a judg-
ment as a basis for his recovery.

As to the second ground, numerous authorities are cited to
the effect that until a receiver's sale is confirmed it is incomplete
and confers no rights. This contention is not applicable for the

same reason as the first. Plaintiff in error is not relying upon this receiver's sale to maintain the action.

As to the third contention, the plaintiff alleges that the prop-. erty covered by the mortgage was sold and transferred by the receiver to the defendant Moffett; that said defendant Moffett holds an interest in and to said lands by virtue of said transfer, but took the same with constructive and actual notice of the existence of said mortgage. In the defendant's brief the cases of *Short v. Nooner,* 16 Kan. 220, *Delahay et al. v. Goldie,* 17 Kan. 263, *Horton v. Haines,* 23 Okla. 878, 102 Pac. 121, are cited, in each of which the following form, found in Estee's Pleading, is approved, and such allegations are deemed sufficient in actions of this character:

"That the defendant, ———, has or claims some interest in, or lien upon, the said real property, but the same, whatever it may be, is subject to the lien of the said mortgagee."

Therefore, it was not necessary for the plaintiff to allege the character of title of the defendant, or to say anything about the receivership proceedings. He alleges that the defendant holds an interest in and to said lands by virtue of such transfer, but took the same with constructive and actual notice of the existence of said mortgage. This shows the adverse character of defendant's interest; that it is subsequent to the mortgage, and if he took it with constructive and actual notice, as alleged, it must have been subject to plaintiff's mortgage lien; if not subject to the mortgage, then it is a matter of defense.

As to the fourth proposition, as to whether or not the receiver's sale is good and the effect thereof as to the mortgage, that is purely a matter of defense. It is contended that the mortgage is invalid because it contains the following grants and provisions:

"Doth grant, bargain, sell, alien, enfeoff, release, convey, confirm, assign, transfer and set over unto the said trustee and to his successors and assigns all the rights, interests and claim in or to five thousand one hundred and twenty acres of land located in Osage Reservation attached to county of Pawnee, territory of Oklahoma, more fully described as follows, to wit: Lots 202 and 290 and section 19, township 25, range

10 and section 17, 18, 19 and 20 in township 22, range 9, together with all the corporate rights, privileges and franchises of the said company now possessed in connection with the said property and the construction, maintenance, use and enjoyment of the same and together with all the easements and appurtenances whatsoever which to the hereby mortgaged premises may now or hereafter belong, or in anywise appertain, and the reservations, remainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, claim and demand whatsoever of it, the said company at law or in equity of, into and out of the same, and every part and parcel thereof."

Article 2 of said mortgage, among other things, provides as follows:

"Until default shall be made by the company in payment of the principal or interest of said bonds, or some part of either principal or interest, or default shall be made in the manner, and as herein provided in respect of something therein and thereby required to be done, performed or kept by the company or until by express conditions of this indenture the right of entry shall accrue to the trustee, the company shall be permitted to possess, manage and enjoy all and singular the said property, real, personal and mixed, with the appurtenances and their franchises and privileges, and to take and use all the said materials and supplies, and all the rents, incomes, profits, and issues of said property in the same manner and with the same effect as if this indenture had not been made and until default as aforesaid shall be made by said company. And said company may, at its discretion, from time to time, sell, exchange or assign free from this indenture, and the trusts thereof any personal property which may at any time be subject thereto, but the said company shall and will, so long as this indenture shall continue in force, from time to time, replace such portions of the said personal property or the whole of it as may, and as often as it shall become worn out by use or destroyed by accident or sold or otherwise disposed of, with such new personal property as may be necessary for the beneficial working of said company and shall perpetuate and maintain the same."

Defendant further contends that this mortgage should be treated as a mortgage of personal property, and that under the foregoing terms thereof the mortgagor is permitted to remain in possession with the full power to sell and dispose of the same, and it is therefore void as to the creditors. A lease for oil and

gas purposes, in *Duff v. Keaton,* 33 Okla. 92, 124 Pac. 291, 42 L. R. A. (N. S.) 472, is held to be a chattel real, but this mortgage does not fall within the class of cases such as *Bank of Perry v. Cooke et al.,* 3 Okla. 534, 41 Pac. 628, where a party mortgages a stock of goods and is permitted to remain in possession and sell and dispose of the same in the ordinary course of trade, and apply the proceeds to his own use. In the case at bar the oil and gas lease is mortgaged, and it is very similar in terms to that of an ordinary farm mortgage. The mortgagor is permitted to remain in possession of the property, and is entitled to the rents, issues, and profits. He may sell, assign, or exchange any of the materials and supplies, machinery, etc., used on the lease for the purpose of producing oil and gas, from time to time, but he is required to replace such portions of said property with such new personal property as may be necessary for the beneficial working of said company. The mortgagors were not engaged in the buying and selling of supplies, machinery, and material. Their business was the production of oil and gas, and these supplies and materials were a' mere incident, but necessary to the perpetuation and maintenance of their business, that of producing oil and gas from this lease. And while the mortgage is intended to cover this machinery, materials, and supplies, the effect of the provisions of article 2, *supra,* is simply to require the mortgagor to keep the same in good repair. And in any event it is not disclosed by the record that the defendant Moffett is or was a creditor of the mortgagors.

In the fifth assignment of error there is no merit. The mortgage is not a lease, sublease, assignment, or instrument operating as an assignment of the lease. The mortgage violated no express provisions of law, nor was it contrary to public policy. The Act of Congress of March 3, 1905, *supra,* contains no provision as to restrictions against alienation or assignment of rights under the original lease. On the contrary, subleases are approved and extended by the act and future assignments and subleases thereof contemplated. The act was intended to perpetuate the Foster lease and to provide and maintain a means whereby the oil and gas lands of the Osages could be developed. The

mortgage, notwithstanding its form, in law and fact conveyed no title in the lease to the trustee, but is a mere security operating upon the property as a lien or incumbrance only.

If this property is sold at a foreclosure sale, the doctrine of *caveat emptor* applies, as to the purchaser, and if it is necessary to secure the approval of the Secretary of the Interior, that is a matter in which defendant Moffett is not concerned. If he is the holder of the legal title to the leases, his title is no better than that of his grantor, the Philadelphia-Osage Oil Company, and, standing in its shoes, if the property is sold to satisfy the obligations of such company, whether the lease should, after the sale, be approved or disapproved would not affect his status in the least.

The petition states a cause of action and the trial court erred in sustaining a demurrer thereto. The judgment is reversed, and the cause remanded.

All the Justices concur, except KANE, C. J., absent and not participating.