## McKEE, Exec'r, et al. v. INTERSTATE OIL & GAS CO. et al.

## SMITH et al. v. SAME.

Nos. 8147 and 8994—Opinion Filed Jan. 6, 1920.

Rehearing Denied March 16, 1920.

(Syllabus by the Court.)

1. **Indians—Oil Lease on Indian Land—Foreclosure of Mortgage on Lessee's' Interest—Jurisdiction.**

The district courts of this state have jurisdiction to foreclose a mortgage on the interest of the lessee in an oil and gas lease on Indian land in the Osage Nation while the land is held in trust by the United States, such action in no wise affecting the title of the Indian owners, and not contemplating an invasion of the province of the Secretary of the Interior to approve or disapprove any transfer of the lease, in case of transfer pursuant to a foreclosure sale.

2. **Mortgages—Foreclosure— Nonjoinder of Parties—Effect.**

Nonjoinder of necessary parties in a foreclosure proceeding is not a jurisdictional defect as to parties before the court, any judgment rendered being merely inoperative as to the parties not joined.

3. **Judgment—Vacating—Necessity for Valid Defense.**

In order to vacate a judgment, rendered

upon petition stating a cause of action, upon which a legal summons has been served upon the defendant, it is a condition precedent that defendant must have a valid defense to the judgment rendered.

### 4. Corporations—Contract Between Corporation and Director—Validity.

The rule that a contract between a director and the corporation is voidable at the instance of the latter, or of its stockholders, is not applicable where all interested in the corporation, its officers, directors, and stockholders, have knowledge of such contract and consent to it, and where the property acquired by the corporation under the contract is used for the benefit of the corporation.

### 5. Same—Rights of Director as Creditor and Mortgagee of Corporation.

A director of a corporation occupies a fiduciary relation, where his dealings with the subject-matter of his trust or agency and with the corporation are viewed with jealousy by the courts, and they may be set aside on slight ground.

But one director among several may loan money to the corporation when the money is needed and the transaction is open and otherwise free from blame, and he may buy at a sale under mortgage given by it to him to secure the money loaned, if the sale was a fair one.

### 6. Same—Action to Set Aside Foreclosure Sale—Fraud—Sufficiency of Evidence.

Evidence examined and held insufficient to prove the necessary allegations of fraud, and the trial court did not err in sustaining a demurrer to such evidence.

Error from District Court, Osage County; R. H. Hudson, Judge.

Action by certain stockholders (being Chas. H. McKee, as executor, Fred W. Smith, and others) of the Asphalt Oil Company, a corporation, to vacate a decree of foreclosure of a trust deed and to set aside the sale, declare a trust, and cause an accounting. From a judgment on demurrer to the evidence, plaintiffs bring error. The two cases are consolidated in this court. Affirmed.

W. E. Burke and Leahy & McDonald, for plaintiffs in error.

Sherman, Veasey & O'Mara and Eberlein & Larson, for defendants in error.

OWEN, C. J. The Asphalt Oil. Mining & Mfg. Co. was incorporated in March, 1902; later the name of the corporation was changed to the Asphalt Oil Company, and it became the owner of an oil and gas sublease on 1,300 acres in the Osage Nation, together with improvements, fixtures, machinery, and other property. In 1909 its property was taken over by a receiver in a bankruptcy

proceeding. On October 14, 1909, the stockholders elected Henry Hermann and George W. Putney directors, who continued to hold office during the time of the foreclosure proceedings upon which the present controversy is based. At a meeting of the stockholders held in St. Louis, Mo., August 10, 1910, 91 per cent of the stock being represented, a bond issue of $60,000 was authorized to take care of existing indebtedness and future expenditures. On the first day of October, 1910, a deed of trust was executed to secure the bond issue. Bonds to the amount of $46,100 were issued under the trust deed, the two directors mentioned becoming the holders of $34,500 worth of these bonds, a part of which was for money advanced to the corporation before the issuance of the bonds, a part for money advanced afterward, and some $2,400 worth for services rendered the corporation as directors. The remaining bonds were held largely by stockholders residing near Appleton and Fon du Lac, Wisconsin. Interest on the bonds was payable semi-annually, and default was made on the interest payment due October 1, 1911. By the terms of the trust deed, if the interest due October 1st of each year was not paid by the following January, it was the duty of the trustee, on request of those holding one-third of the outstanding bonds, to bring foreclosure action. On November 22, 1911, the secretary, C. H. Huessemann, issued a notice calling a meeting of the stockholders for December 5, 1911, at Appleton, Wisconsin. This notice referred to the fact that the interest on outstanding bonds had not been paid, and that the question should be considered as to what action should be taken in case of foreclosure. This notice was mailed to all stockholders as their names appeared on the stock register. At the meeting held no quorum was present, and, after receiving a communication from the trustee demanding that something be done toward paying the interest, the meeting adjourned until February 6, 1912, at which time there was again no quorum and the meeting adjourned sine die. No further meeting of the stockholders was ever held. On January 11, 1912, the two directors and some of the other bondholders met and entered into a written contract with A. C. Siekman, an attorney, whereby it was agreed to organize a corporation with an authorized capital stock of $100,000 for the purpose of purchasing the property in the event of foreclosure sale, it being further stipulated that Siekman and C. H. Huessemann, secretary of the Asphalt Company, should receive 40 per cent of the capital stock of the newly organized corporation in consideration of their services. Siekman by the written agreement was made agent of

the bondholders and of the new corporation and authorized to draw up articles of incorporation and by-laws, call the first meeting, apportion the stock, bid in the property and do other necessary acts, the bondholders to have stock in the new corporation equal in amount to the principal and interest on bonds held and money advanced for foreclosure expenses and for perfecting the new corporation. On January 16, 1912, J. J. Sherman, trustee under the trust deed, executed a written power of attorney, appointing Siekman attorney and agent of the Asphalt Company, ` and giving him general authority to act in Sherman's behalf in all matters relating to the business. The directors had notice of this appointment, and no objections were made. Siekman under this authority took charge of the property and business during the foreclosure proceedings, procuring attorneys in Oklahoma to bring the foreclosure action, also acting as agent and adviser of the directors and of the other bondholders interested with them. On January 29, 1912, foreclosure proceedings were brought by the trustee on the request of the bondholders. On July 16, 1912, the court rendered judgment by default against the Asphalt Oil Company for $46,100 and decreeing foreclosure.

The directors, although disqualified, did not call the attention of the stockholders to such disqualification, that other representatives of the corporation, not disqualified, might be selected to look after its interests in the matters leading to the foreclosure suit filed and the sheriff's sale subsequently had, nor did they make any statement of such circumstances to the trial court. The Asphalt Oil Company was not represented in the foreclosure proceedings except by Siekman, acting for Sherman, and by the directors, the majority of whom were, as Siekman, disqualified by reason of being bidders at the foreclosure sale. The order of sale issued February 10, 1913, the property was sold at sheriff's sale on March 15, 1913, and the sale was confirmed March 18, 1913. Siekman, as its attorney and agent, purchased the property, as previously arranged, in the name of the Interstate Oil & Gas Company. His bid was $15,000 and there was no other bid. Failing to receive from Sherman the bonds which he expected to turn in as payment at the foreclosure sale, Seikman was forced to put up cash. He sent the following telegram to Sherman, after the sale:

"Your failure to send bonds Monday per agreement worked considerable hardship forced bidding cash basis pledged personal security and attorneys security lucky Harkworthy had funds forced low bid $15,000 order Fon du Lac parties not accepted they must take consequences not fault of mine bonds should have been here."

It appears that $1,900 cash was paid, and the remainder of the purchase price was paid in bonds. The money thus received was paid to the bondholders not in the new corporation in the proportionate amount due on their bonds, respectively, and the trustee procured surrender of such bonds and a release of liability of the Asphalt Oil Company. Siekman secured the approval of the Secretary of the Interior to the transfer made by the sheriff after confirmation of the sale by the court.

On April 18, 1914, Fred W. Smith, on behalf of himself and certain other stockholders, filed a petition in the foreclosure proceedings, seeking, in the right of the Asphalt Oil Company, to have the judgment vacated. The Interstate Oil & Gas Company was made a party, summons being served on its president, A. C. Siekman. On July 6, 1914, Chas. H. McKee, as executor of the will of Ellen McKee, deceased, who prior to her death held $10,000 of stock in the oil corporation, on behalf of himself as executor and other stockholders similarly situated, filed a petition in equity in the right of the Asphalt Oil Company, setting up the facts, alleging a defense, and seeking to vacate the judgment and sale of the property, also praying that the Interstate Oil & Gas Company be declared to hold the property in trust and be required to convey the same to the Asphalt Oil Company; that an accounting be had and other equitable relief be awarded. By agreement the two causes of action were submitted in the trial court on the same evidence. A demurrer to the evidence was sustained, and judgment rendered in both cases for defendants. On appeal to this court the two cases were consolidated and briefed together.

The only questions necessary for determination are whether the district court had jurisdiction of the subject-matter in the foreclosure proceedings under which the property was sold, and whether the trial court erred in holding there was not sufficient proof of fraud.

It is urged the court was without jurisdiction in the foreclosure proceedings for the reason that the buildings and improvements erected under the lease became a part of the land of the Osage Nation, and therefor the action involved the title to the land which was held by the United States as trustee.

The action in no way affected the title of the Indian owners and did not in any way contemplate any invasion of the province of the Secretary of the Interior to approve or

disapprove any transfer of the lease, or any interest in the real estate. It was merely an action to foreclose a mortgage on the interest of the lessee in the oil and gas lease, and even though it be held that such proceedings did determine the rights between the parties as to the interest in the land, or permanent fixtures thereon, it would not have such effect as against the United States or the Indian owners. It is not necessary to determine whether the United States or the Osage Nation were necessary parties.

Nonjoinder of necessary parties in a foreclosure action is not a jurisdictional defect as to the parties before the court. 27 Cyc. 1792: Benedict v. Mortimer (N. J.) 18 Atl. 246; the judgment rendered being merely inoperative as to parties not joined. The controversy in the foreclosure proceedings did not involve a determination of the title or the right of possession to the lands covered by the lease as against the United States or the Osage Nation. The jurisdiction of the court was invoked merely to foreclose an alleged lien on the interest of the corporation in the mortgaged property, and the judgment does not affect, in any manner, the rights of the Indian tribe or any members thereof or the United States. The sheriff's deed transferring the property was properly submitted for the approval of the Secretary of the Interior, but that necessity did not serve to oust the district court of jurisdiction. Davis v. Moffet, 43 Okla. 771, 144 Pac. 607.

In order to vacate a judgment, rendered upon a petition stating a cause of action, upon which a legal summons has been served upon the defendant, it is a condition precedent that defendant must have a valid defense to the judgment rendered. Section 5271, Rev. Laws 1910; Harn v. Amazon Fire Ins. Co., 66 Oklahoma, 167 Pac. 473; Hollister v. Kory et al., 47 Okla. 568, 149 Pac. 1136.

Plaintiffs allege in their petition that the bonds upon which the foreclosure was based were issued without the knowledge or consent of the stockholders, and there was inherent fraud in the transaction, inasmuch as the directors issued such bonds to themselves. We fail to find sufficient evidence in the record to support these allegations. It appears that at the meeting of the stockholders held in St. Louis, August 10, 1910, at which meeting 91 per cent. of the capital stock was represented, it was unanimously agreed that bonds up to $60,000 should be issued and sold. Later, it appears, the two directors bought a large quantity of these bonds for themselves, but under the circumstances this does not amount to fraud, unless it should appear they did not pay full price for the bonds, and there is no conten-

tion to this effect. The bonds were issued with full consent of a large majority of the stockholders. There is evidence that money was owing to the president, Hermann, and treasurer, Putney, for services rendered the corporation as directors, under the by-laws of the company, and they received $2,400 worth of bonds in payment therefor. Since it does not appear they were paying themselves more than had been previously authorized by the corporation, the evidence fails to show fraud in this particular. Taking into account the previous bankrupt condition of the corporation, the undisputed difficulty in procuring funds to finance it, and the general uncertainty of the oil business at all times, together with the fact that the two directors concerned had previously advanced money to the corporation to tide it over difficulties, it does not appear there was any fraud, either actual or constructive, in the issuance and sale of the bonds. There being no fraud, plaintiffs could have had no defense to the foreclosure suit had they appeared. The case of Sanford Fork & Tool Company v. Howe et al., 157 U. S. 312, 15 Sup. Ct. 621, 39 L. Ed. 713, was one in which a similar question arose. There the corporation, which was a new concern, had issued several notes, which were endorsed by some of the stockholders and directors. The corporation received the money from the discounting of these notes. As they began to mature, it was found the company was unable to pay them, and thereupon they called a special meeting of the stockholders, at which about 75 per cent. of the stock was represented, and passed a resolution authorizing the directors to execute a mortgage upon all or any part of the property of the corporation to secure any new indebtedness that might be incurred, or the renewal and extension of any present indebtedness or liability of the corporation. Thereupon a trust deed was issued, and the directors and some of the stockholders, in reliance upon the former proceedings, advanced money to pay some of the notes and some other outstanding obligations of the corporation. The validity of these loans was tested in the action. The Supreme Court of the United States, speaking through Mr. Justice Brewer, said:

"It is said that the directors of a corporation stand in a fiduciary relation to both the stockholders and the creditors. Whatever may be the extent of the fiduciary obligation of directors to stockholders, there can be no pretense in this case of a breach thereof. The mortgage was expressly authorized by the stockholders, and they cannot claim that the directors in executing the instrument, which they had themselves authorized, were guilty of any breach of duty to them. It is often said that directors

may not take advantage of their position and power to secure personal advantage to themselves, but that proposition has no application here, for the corporation itself directed this mortgage."

In The Omaha Hotel Co. v. Wade, 97 U. S. 13, 24 L. Ed. 917, the stockholders voted to issue bonds for a loan, and the directors bought some of the bonds so issued. It was held that such bonds were not void, for the reason the stockholders had authorized the loan and the bond issue.

The rule that a contract between a director and the corporation is voidable at the instance of the latter, or of its stockholders, is not applicable where all interested in the corporation, its officers, directors, and stockholders, have knowledge of such contract and consent to it, and where the property acquired by the corporation under the contract is used for the benefit of the corporation. Battelle v. Northwestern Cement & Concrete Pav. Co. (Minn.) 33 N. W. 327; Gould v. Little Rock, M. R. & T. R. Co., 52 Fed. 680.

While it is true that where directors deal directly with the corporation and represent both themselves and the corporation, there is presumption of fraud, and many courts hold, as contended by plaintiffs, that all such contracts are voidable at the option of the corporation, or by its stockholders representing the corporation, this rule does not apply in the case at bar, for the reason the bond issue was admittedly authorized by the stockholders.

It does not appear that the directors spent any of the money of the corporation in a manner not authorized by law, or that they, in any way, betrayed their trust as directors in the management of the business of the corporation prior to the foreclosure of the trust deed. These directors took office October 14, 1909, at the time when the corporation had narrowly escaped bankruptcy, and it cannot be assumed that the assets of the company, at that time, bore any close relation to the inflated capitalization of the corporation. Up to the beginning of the foreclosure proceedings there was nothing irregular in the issuance of the bonds or the management of the business which could be set up as a defense in the foreclosure action. The mere fact that part of the plaintiffs in the foreclosure action were directors of the corporation would not of itself operate as a defense or be sufficient to set aside the decree. A director of a corporation occupies a fiduciary relation, where his dealings with the subject-matter of his trust and with the corporation are viewed with jealousy by the courts, and they may be set aside on slight ground; but, as was held by the Supreme Court of the United States in The Twin Lakes Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328.

"But one director among several may loan money to the corporation when the money is needed and the transaction is open and otherwise free from blame, and he may buy at a sale under a mortgage given by it to him to secure the money loaned, if the sale was a fair one."

Nor does there appear to be sufficient proof of fraud in concealing the actual value of the property. One of the plaintiffs' witnesses testified he thought it was worth from $25,000 to $30,000, but admitted he had never been nearer the property than 25 miles, and his opinion under these circumstances cannot be relied on to overturn the decree of the trial court. Sherman, the trustee, who all parties agreed was honest and conscientious, stated that $15,000 was about what he thought it would bring. This was all the direct evidence as to value, but it appears Huessemann, the secretary of the Interstate Oil & Gas Company, tried to sell the stock at par and failed, and later sold his 4,000 shares for 25 cents on the dollar. That the property was to be bought by the new corporation only in order to protect the bondholders would appear from the fact that they agreed to purchase the property at the foreclosure sale only in the event it did not bring enough to liquidate the outstanding bonds.

Plaintiffs contend there was a chilling of the bidding at the foreclosure sale, but admit "the testimony is not very strong on this proposition." The only evidence supporting this contention was the testimony of Ornstein and Eiting, who testified that Siekman made statements that he was going to keep off outside bidders, and the telegram he sent to Sherman after the sale in which he stated that the failure of certain bonds to arrive "forced bidding cash basis"; that it was lucky the money was available, and continued, "forced low bid $15,000." This evidence is not sufficient to establish the contention of plaintiffs. If Siekman really prevented anyone from bidding on the property, plaintiffs might have offered proof that such was the case, but the record discloses no effort was made to introduce such testimony.

We are of the opinion the plaintiffs failed to prove the necessary allegations of their petitions, and that the trial court did not err in sustaining the demurrer to the evidence.

The judgment is therefore affirmed.

RAINEY, PITCHFORD, McNEILL, JOHNSON, and HIGGINS, JJ., concur.