**LIVELY, Trustee, et al. v. EVANS-HOWARD FIRE BRICK CO. et al.**

No. 15935—Opinion Filed Nov. 3, 1925.

Petition for Rehearing Stricken Jan. 12, 1926.

1. Appearance—Special Appearance — Application of Mechanic's Lien Claimant in Court of Another County to Make Receiver Party to Lien Foreclosure.

In a case where suit is brought in one county to foreclose a mortgage on real estate in another county, and a receiver is

appointed to take charge of the property in the interest of the mortgagee, and thereafter a party claiming a mechanic's lien on said real estate makes application and obtains leave of the court where the mortgage foreclosure is pending and the receiver is appointed to make the said receiver a party defendant in an action against the owner of the real estate to assert and foreclose his mechanic's lien against said real estate in the district court of the county where said real estate is located, such application is a special appearance and does not bind the applicant beyond the terms and purpose of the application.

**2. Judgment — Parties Concluded — Adjudication in Mortgage Foreclosure with Receivership.**

The receiver appointed to take charge of the property in a mortgage foreclosure action takes said property subject to the liens, priorities, and equities existing at the time of his appointment. Such liens, priorities, and equities may be adjudicated in the court appointing receiver where all parties are brought before the court by proper pleading and due notice, but such adjudication cannot affect the claims and rights of parties not properly brought before the court.

**3. Same—Jurisdiction in Mechanic's Lien Foreclosure Where Priorities not Adjudicated in Previous Mortgage Foreclosure.**

Where action is brought to foreclose a mortgage on real estate, a part of which is in another county than the one where the action is brought, and a receiver is appointed to take charge of the property in the interest of the mortgagee, and a mechanic's lienholder against the said real estate makes application to and obtains an order of said court granting leave to make said receiver a party defendant in an action to be brought in the county of the real estate to assert and foreclose the mechanic's lien, and said action is filed and all the parties to the mortgage action in the other county are made defendants, as well as the owner of the real estate, and is joined as to the priority of the mechanic's lien, and no such issue is considered in the mortgage foreclosure action, and the receiver sells the property under judgment foreclosing the mortgage and is discharged and the case closed before the mechanic's lien action is tried, and the parties buying or incumbering the real estate are made parties defendants, and answer in same, the court has jurisdiction for all purposes.

**4. Mechanics' Liens—Lien for Replenishing Materials for Zinc Smelter.**

Under section 7461, C. S. 1921, brickbats and fire clay furnished for the purpose of making retort and fire brick in a zinc manufacturing smelter, are materials for making improvements and repairs on the real estate and sufficient, when used for such purpose, to create the mechanic's lien.

**5. Same—Necessary Materials Furnished but not Used.**

Where the evidence shows that the materials furnished were necessary to replenish retorts and fire brick constantly being burned out in and about the furnace of a zinc smelter, and some of the materials furnished were not used but were in possession of defendant, the same is sufficient to show the materials were used for the purpose for which they were sold.

**6. Same—Validity of Lien Based on Contract Made in Another State.**

A lien for material furnished for the erection of improvements on lands in Oklahoma may be maintained where the contract is entered into in Missouri as well as if it were made in Oklahoma. U. S. Inv. Co. v. Phelps & Bigelow Windmill Co., 54 Kan. 144, 37 Pac. 982.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Okmulgee County; Charles C. Smith, Assigned Judge.

Action by Evans-Howard Fire Brick Company and Volz Fire Clay Company against the Victory Metal Company, W. H. Logan, M. R. Lively, and J. W. Wingfield, trustee, to enforce mechanics' liens. Two cases consolidated. Judgment for plaintiffs, and defendants appeal. Affirmed.

Dick Rice and M. R. Lively, for plaintiffs in error.

I. H. Cox and John C. Warnock, for defendant in error.

Opinion by THREADGILL, C. This action is a consolidation of two original actions instituted for the purpose of declaring on mechanics' liens of equal priority against the Victory Metal Company's zinc smelter property located at Henryetta, Okla. The two causes were filed on the same day, April 4, 1921. The items of account claimed by Evans-Howard Brick Company were 8 carloads of brickbats valued at $2,320.06, delivered f. o. b. cars at St. Louis between June and November, 1920, and to be used by the metal company in making retorts for its furnaces and fire brick for repairs. The items of the account claimed by the Volz Fire Clay Company were 17 carloads of fire clay valued at $1,117.70, delivered f. o. b. cars St. Louis, between March 10 and October 14, 1920, and to be used by the metal company in making retorts and repairs in its furnaces. At the time the suits were filed, an action

was pending against the Victory Metal Company in the district court of Ottawa county to foreclose a mortgage or trust deed dated July 15, 1920, and filed August 5, 1920, in the hands of the trustee, W. H. Logan, for the sum of $150,000, covering all the smelter property of the Victory Metal Company in Okmulgee county. In this action W. H. Logan and Geo. W. Moore were appointed receivers to take charge of the smelter property and hold the same subject to the orders of the court. The Evans-Howard Brick Company and Volz Fire Clay Company, plaintiffs in the action in the district court of Okmulgee county, were not made parties to the foreclosure action in Ottawa county. Before bringing the suits in Okmulgee county, the plaintiffs, by special application, obtained leave of the district court of Ottawa county on March 7, 1921, to make said receivers parties defendant to their proposed action against the Victory Metal Company. The said receivers were accordingly made parties and answered in both cases. Thereafter, judgment was had in the district court of Ottawa county in favor of the trustee to foreclose the trust deed, and the receivers were ordered to sell the property, which they did at a public sale on February 16, 1922, and before the actions to foreclose the mechanics' liens were tried in Okmulgee county. The two causes we are considering were consolidated by agreement on May 7, 1921. After the receivers' sale under the order and approval of the district court of Ottawa county, and after the receivers were discharged and the cases closed, plaintiffs in the mechanics' liens cases, by leave of court, filed a supplemental petition June 14, 1923, and made M. R. Lively, the purchaser of the property at the receivers' sale, and J. F. Wingfield, trustee, to whom said Lively made a deed of trust on said property for the purchase price in the sum of $35,000, and all the parties appeared and answered, and the issues were tried to the court and judgment rendered on May 23, 1924, in favor of plaintiffs, and defendants appeal, contending that the judgment is erroneous and the cause should be reversed.

1. The first question presented is one of jurisdiction. Defendants say the district court of Ottawa county, having acquired jurisdiction to foreclose the mortgage or trust deed lien and having placed the property in the hands of receivers before plaintiffs brought their action in the district court of Okmulgee county, that said court had jurisdiction for all purposes in determining the claims and liens against the property in question, and the Okmulgee district court was without jurisdiction to pass on any of these matters.

Defendants say that when plaintiffs made application to the district court of Ottawa county for permission to make the receivers parties to the mechanic's lien action they proposed to bring in the district court of Okmulgee county, that they, in effect, entered their appearance for all purposes and became parties in the receivership case and subject to the jurisdiction of the receivership court. They cite as authorities: 34 Cyc. page 419; N. Y. Security & Trust Co. v. Illinois Transfer Co., 104 Fed. 710, 44 C. C. A. 161; Investment Registry v. C. & M. E. R. Co., 251 Fed. 513; Foster v. Field, 13 Okla. 230, 74 Pac. 190; Holmes & Hibbard Mortgage Co. v. Ardmore National Bank, 48 Okla. 319, 150 Pac. 105; Commercial National Bank v. Burch, 141 Ill. 519, 33 Am. St. Rep. 331. These cases do not support the proposition that the application to bring suit against the receivers binds the appellant to the jurisdiction of the receivership court for all purposes, but on the contrary, they support the proposition that the said court may authorize the bringing of the suit against the receivers in another court for purpose of determining certain rights. The authority involved judicial discretion and the refusal to make the order in a proper case would be ground for mandamus. Petaluma Savings Bank v. Superior Court (Cal.) 44 Pac. 177.

It is not necessary to discuss what the status of plaintiff would have been, and what the results would have been, had the receivership court refused the application to bring suit against the receivers in the district court of Okmulgee county, and it is not necessary to pass on the question as to whether or not their claim could have been allowed and adjudicated by the receivership court, although the statute, section 7478, Comp. St. 1921, provides that a mechanics' lien, such as plaintiffs' claim, should be brought in the court where the property is situated, for the reason the receivership court had the power and authority to grant the application to bring the action in another court, which grant was given, not revoked, and it must be held by the great weight of authority that the district court of Okmulgee county had jurisdiction of the parties and subject-matter of the action.

2. Defendants further contend that if the district court of Okmulgee county had jurisdiction to determine the amount of plaintiffs' claims, and the fact of the liens

and the amount of property involved, it had no jurisdiction to determine the priority of the liens, as this authority was vested in the receivership court. They cite Premier Steel Co. v. McElwaine-Richards Co. (Ind.) 43 N. E. 876; Baldwin v. Spear Bros. (Vt.) 64 Atl. 235; 34 Cyc. 447; Harding v. Nettleton, 84 Mo. 658. The rule laid down in these cases presupposes that the property subject to the lien is in the hands of the receivers at the time the lienholder asserts his right to enforce the lien by a sale of the property, but it can have no application to a lien not involved in the issues before the receivership court (34 Cyc. page 320), and which is asserted by permission of said court in another court, of which all parties in the receivership court have knowledge, and where the amount of the claim and the extent of the lien were not determined until the receivers were discharged from the receivership. The appointment of the receiver in a mortgage foreclosure action, and his possession of the property, do not diminish other outstanding liens against it. The receiver takes the property subject to the liens, priorities and equities existing at the time of his appointment. 23 R. C. L. page 56. These liens, priorities, and equities may all be adjudicated in the same court, but such adjudication cannot affect the liens of creditors, and claims otherwise not before the court. In the case of the foreclosure of a mortgage, and the appointment of a receiver to take possession of the property to conserve it in the interests of the mortgagee, it is not required that other parties be joined in the action without the plaintiff to determine the rights and priorities of other parties that claim an adverse interest in the property. Where other parties are joined in the action, their rights and liens are concluded by the judgment, but where they are not joined and their rights are not determined in such action, they are not concluded. 34 Cyc. 318; Miller v. Thompson, 91 Okla. 138, 216 Pac. 641; McKee v. Interstate Oil & Gas Co., 77 Okla. 260, 188 Pac. 109. In the instant case, plaintiffs' rights were not adjudicated in the receivership court. They were not parties to the action in that court for the purpose of determining their claims or statutory liens to secure the same. It is true they made application to said court, for the purpose of obtaining leave to make the receivers of the property involved parties to an action they desired to bring in Okmulgee county to adjudicate their claims and materialmen's liens against the property placed in the hands of the receivers under the mortgage sued on in that court. They were not parties for any other purpose. They obtained all they asked without objection. When they filed suit in the district court of Okmulgee county, it was against the Victory Medal Company, and the receivers were made parties because they were in the chain of title, and the party who bought the property at the receivers' sale, and the trustee, to whom he made a mortgage or trust deed on the property, were made parties because they were in the chain of title, and at the time the judgment was rendered the receivers had been discharged by the district court of Ottawa county and had no interest whatever in the property, and the issues tried and determined were not tried and determined in the district court of Ottawa county, and the rule requiring priorities to be determined in the receivership court could have no application to a case of this sort.

We must, therefore, hold that the district court of Okmulgee county committed no error in passing on the issues and rendering judgment on the same. Blair v. Walker, 26 Fed. 73.

3. Defendants further contend that the materials furnished by plaintiffs were not "lienable under the mechanic's lien statute." This statute is section 7461, C. O. S. 1921, and as far as applicable to this case, is as follows:

"Any person who shall, under oral or written contract with the owner of any tract or piece of land, perform labor, or furnish material for the erection, alteration or repair of any building, improvement, or structure thereon; or who shall furnish material or perform labor in putting up any fixtures, machinery in or attachment to, any such building, structure or improvement * * * shall have a lien upon the whole of said tract or piece of land, the buildings and appurtenances. * * * Such liens shall be preferred to all other liens or incumbrances which may attach to or upon said land, buildings or improvements or either of them, subsequent to the commencement of such building, the furnishing or putting up of such fixtures or machinery; * * * and such lien shall follow said property and each and every part thereof, and be enforceable against the said property wherever the same may be found, and compliance with the provisions of this article shall constitute constructive notice of the lien claimant's lien to all purchasers and incumbrancers of said property or any part thereof, subsequent to the date of the furnishing of the first item of material." . . . .

The evidence shows that the brickbats and fire clay furnished by the plaintiffs

were for the purpose of constructing retorts for the furnaces and fire brick for repairs. The retorts were used in the furnace to hold the crude ore and intensify the heat in melting and purifying the zinc metal. The retorts were short-lived under the great heat and were constantly replaced by new retorts, and the fire brick were to repair places about the furnace where the fire brick burned out under the intense heat. These retorts and fire brick were necessary to the furnace and a part of the permanent apparatus or machinery in smelting the crude ore. Defendants contend that these materials, under the provisions of the statute, could not be considered as a part of the repairs, improvements, or structures, but should be classed on the same footing with coal, gas, water, ore, etc., citing the cases of Standard Oil Co. v. Lane (Wis.) 7 L. R. A. 191; Phelps v. Baker, 49 Kan. 434. 30 Pac. 472; Meek v. Parker, 63 Ark. 367. 33 S. W. 900, 58 Am. St. Rep. 119. We do not think these cases decide the point. The question is whether or not the materials furnished were a part of the whole manufacturing equipment. The question finds answer in the case of American Woodworking Machinery Co. v. Agelasto, 136 Fed. 399. The court says:

"Our opinion is that the site, the structure, the motive power and the machinery, whether the last be movable or immovable, combine to constitute the manufacturing plant, and the operations as manufacturer cannot begin until the plant is thus complete, or, in the common parlance, until the plant is a going concern? Then, and not until then, it becomes necessary to have supplies for operating. The supplies necessary for the operating of a manufacturing establishment are such as pertain to the production of its output, and do not include material or machinery necessary for the construction, equipment, and completion of the plant."

Under this construction, we are of the opinion that the brickbats and fire clay furnished by plaintiffs and used in constructing retorts for the furnaces and repairs for burnt out fire brick were a part of the smelting plant and necessary to the machinery to make it a "going concern," and the statute creating the lien is broad enough to include material of this character.

4. Defendants further contend that the evidence is not sufficient to show that the materials furnished were used for the purpose for which they were sold. The evidence shows that some of the materials were in the factory and not made into retorts and fire brick at the time the smelter closed down and the litigation commenced. Defendants cite us to Debolt v. Farmers' Exchange Bank, 51 Okla. 112, 151 Pac. 686, in support of their proposition. In this case, the contractors, who ordered the building materials, diverted some of them to another building off of the premises of the owner for which they were ordered, and the court held that the materialmen could not recover for the material so diverted and not used for the owner's building. This case is not applicable to the case at bar for the reason that all the materials furnished the metal company were received by the owner, and the part not actually used was kept in store and was ready for use at any time the manufacturing plant commenced work. It was necessary to have retorts and fire brick on hand to operate the plant, and it was necessary to have materials on hand to replenish the retorts and fire brick, as they were needed, and under this state of facts the materials furnished for this purpose and kept on hand for this purpose must be considered as material used, and sufficient to fix the mechanic's lien.

5. Defendants' final contention is that since the materials were delivered by plaintiffs to defendant metal company. f. o. b. St. Louis, the contract was a Missouri contract and not subject to the mechanc's lien law of this state. This court does not seem to have passed on this question, but the Kansas court, under a similar statute to ours, in the case of United States Inv. Co. v Phelps & Biglow Windmill Co., 54 Kan. 144, 37 Pac. 982; and the New Mexico court, in the case of Genest v. Las Vegas Masonic Bldg. Association, 67 Pac. 743, have passed on the question adversely to defendants' contention. Defendants furnish us no good reason for their contention, and we find none, and the above authorities cited by plaintiffs seem to be in point. the reasoning is sound, and we think they are applicable to the question raised. We have carefully examined the whole record in this case and read the evidence, which is voluminous, and we are of the opinion that the judgment of the trial court should be affirmed.

By the Court; It is so ordered.

Note.—See under (1) 4 C. J. p. 1341, § 32 (Anno) ; 34 Cyc. p. 419. (2) 34 Cyc. pp. 193, 363 ; 23 R. C. L. p. 56 ; 3 R. C. L. Supp. p. 1312 ; 4 R. C. L. Supp. p. 1491 ; 5 R. C. L. Supp. p. 1231. (3) 34 Cyc. p. 447. (4) 27 Cys. p. 45 ; anno. 42 L. R. A. (N. S.) 354 ; 18 R. C. L. p. 915. (5) 27 Cyc. p. 47 (Anno) ; anno. 31 L. R. A. (N. S.) 749 ; L. R. A. 1918D, 1041 ; 18 R. C. L. p. 920 ; 3 R. C. L. Supp. 877. (6) 27 Cyc. p. 67.