**Loren Rex BOHN, d/b/a Rex Plumbing Company, a sole proprietorship, Appellee,**

v.

**Helen S. DIVINE et al., Appellants.**

**No. 47152.**

Court of Appeals of Oklahoma, Division 2.

Dec. 9, 1975.

Released for Publication by Order of Court of Appeals Dec. 31, 1975.

Robert F. Bourk, Oklahoma City, for appellee.

John B. Hayes, Watts, Looney, Nichols, Johnson & Hayes, Oklahoma City, for appellants.

NEPTUNE, Presiding Judge.

Plaintiff Bohn, a subcontractor, furnished plumbing materials and labor in construction of an apartment complex, for which he was not fully paid. The general contractor, Consolidated Contractors, Inc., had operated under an interim financing agreement which provided for monthly disbursements based on the percentage of completion. The record indicates that most of the $700,000 commitment had been disbursed (over a period of eight months) when the principal owner discovered that subcontractors were not being paid and that they had commenced filing liens. Plaintiff's lien claim was for an unpaid balance in the amount of $21,449.27.

Plaintiff initiated this action against Consolidated and its alleged managing officers for the unpaid balance plus punitive damages in the amount of $75,000.

After submission to the trial court of certain depositions, financial records, and plaintiff's affidavit, plaintiff moved for summary judgment as to all aspects of the action except punitive damages. Defend-

ants responded only by a brief in opposition to the motion. Thereafter, the trial court granted partial summary judgment for plaintiff against all defendants. Defendants, Consolidated and two of the officers, appeal.

Appellants contend that substantial controversy exists as to material facts and that the trial court construed improperly 42 O.S.1971 §§ 152, 153, the statutes under which appellee sought to hold liable the contractor and it managing officers. Appellants' propositions read as follows:

"I. There were substantial controversies as to material facts which should have been tried upon the merits.

"II. The Trial Court erred in concluding that 42 O.S., §§ 152 and 153, creates a civil cause of action in favor of a subcontractor or materialman, as opposed to the owner."

■ First, we will consider appellants' contention that no cause of action in favor of a subcontractor emanates from the statutes. The sections read as follows:

" § 152. *Proceeds of building or remodeling contracts, mortgages or warranty deeds as trust funds for payment of lienable claims.*—

"(1) The amount payable under any building or remodeling contract shall, upon receipt by any contractor or subcontractor, be held as trust funds for the payment of all lienable claims due and owing or to become due and owing by such contractors or subcontractors by reason of such building or remodeling contract.

"(2) The monies received under any mortgage given for the purpose of construction or remodeling any structure shall upon receipt by the mortgagor be held as trust funds for the payment of all valid lienable claims due and owing or to become due and owing by such mortgagor·by reason of such building or remodeling contract.

"(3) The amount received by any vendor of real property under a warranty deed shall, upon receipt by the vendor,

be held as trust funds for the payment of all valid lienable claims due and owing or to become due and owing by such vendor or his predecessors in title by reason of any improvements made upon such property within four (4) months prior to the delivery of said deed.

" § 153. *Payment of lienable claims.*—

"(1) Such trust funds shall be applied to the payment of said valid lienable claims and no portion thereof shall be used for any other purpose until all lienable claims due and owing or to become due and owing shall have been paid.

"(2) If the party receiving any money under Section 152 shall be a corporation, such corporation and its managing officers shall be liable for the proper application of such trust funds."

Appellee's amended petition contained allegations that Consolidated had received monies pursuant to a building contract and that he, appellee, had a valid lienable claim due and owing, conforming with § 152(1). Further, appellee alleged that Consolidated diverted a portion of those funds to pay other than valid lienable claims, a violation of § 153(1). Finally, under § 153(2), the individual appellants are also liable, claimed appellee, as they are managing officers of Consolidated.

The question this appeal places before us is: Who may, under these statutes, bring a civil action against a corporation or individuals who have diverted funds from such trust accounts to pay other than valid lienable claims? The trial court, by its decision, found that the statutes operated to the benefit of those who held valid lienable claims. Appellee urges us to affirm this holding. Appellants contend that the statutes create an action in favor of only the owner of the property, his grantee, or the entity which furnished the monies placed in the trust account.

So far as we can find there has been only one reported case which has been concerned with the application and construction of these statutes. *Nuclear Corp. of America v. Hale,* N.D.Tex., 355 F.Supp. 193 (1973). This case involved a suit by a

materialman against a Texas corporation and its managing officers. There the court sustained the materialman's claims for monies owed it by reason of materials it furnished the Texas corporation for two building projects—one in Texas and one in Oklahoma. It was found that monies paid to the Texas corporation were diverted to other than valid lienable claims. The Texas and Oklahoma statutes were examined in the *Nuclear Corp.* case only to ascertain whether the individual defendants were managing officers within the context of the statutes. No question was raised nor discussion made as to whether the Oklahoma statutes gave rise to a cause of action in favor of a materialman. Consequently, there appears to be no case law to aid us in our interpretation of the Oklahoma statutes with regard to the question posed.

While statutes concerning this subject matter in some states, such as Texas[1] and New York,[2] have given rise to suits by lien claimants, the language of the statutes there involved clearly indicates that the lien claimants are the intended beneficiaries. Where the statute has not specified who has a cause of action thereunder, the results are not uniform. In allowing an owner to bring suit against a contractor who had diverted funds, the Washington Supreme Court stated in *Maynard Investments Co. v. McCann,* 77 Wash.2d 616, 465 P.2d 657 (1970):

> "The purpose of the statute[3] is to protect the owner of property which may be subject to a valid lien."

■ In approaching the problem of interpreting our statutes, we turn to the primary rule of construction of statutes— which is to ascertain and declare the intention of the legislature and to carry such intention into effect.

The statute as it was adopted in 1965[4] contained only the following text:

"Section 1. *Proceeds of building or remodeling contracts as trust funds.—*

"The amount payable under any building or remodeling contract shall, upon receipt by any contractor or subcontractor, be held as trust funds for the payment of all lienable claims due and owing or to become due and owing by such contractors or subcontractors by reason of such building or remodeling contract.

"Section 2. *Payment of lienable claims. —*

"Such trust funds shall be applied to the payment of said lienable claims and no portion thereof shall be used for any other purpose until all lienable claims due and owing or to become due and owing shall have been paid."

By the 1968 amendment, the proceeds from mortgages and from warranty deeds were made "trust funds"; the amendment also made corporate "managing officers" liable for the proper application of trust funds.

Appellants argue that this history suggests that the legislature never intended to create an additional civil liability, but had in mind deterring misapplication of contract proceeds by way of possible criminal liability.[5]

■ Whether the statutes are remedial or penal has importance as a guide to determining whether they should be liberally or strictly construed. But the rule requiring a liberal construction of remedial statutes and the rule authorizing strict construction of penal statutes are subordinate to the general principle that all statutes should be construed and applied in such a manner as to accomplish the legislative intent. *Watkinson v. Adams,* 187 Okl. 432, 103 P.2d 498 (1939).

■ Appellants' argument, while plausible, leaves us unconvinced as to the legislative intent. The text seems to be remedial

---

1. Tex.Rev.Civ.Stat.Ann. art. 5472e (Supp. 1974).

2. N.Y.Lien Law § 70 et seq. (McKinney 1966).

3. Rev.Code Wash.Ann. § 9.54.080 (1961).

4. Ch. 58, §§ 1, 2 [1965] Okl.Laws p. 58.

5. A person misapplying trust funds would be guilty of "Embezzlement by Trustee." 21 O.S.1971 § 1454.

though the remedies afforded thereby do not greatly enlarge the area of remedies otherwise available in the law. Nevertheless, nothing in the act as originally adopted or in the amendment indicates an intent to adopt a penal statute. On their face the statutes, in creating a "trust" of construction funds, appear to be protective in nature—protective of the rights of all to whom an obligation is owed for the fund's proper disbursement. For this reason, we construe the statutes liberally as though they are remedial statutes.

The provisions of §§ 152 and 153 are not restrictive. Had the legislature intended that their benefits be not available to lien claimants, it could and probably would have said so. It did not. We therefore hold that the trial court was correct in permitting the application of the statutes to the litigant asserting a lienable claim.

Having so interpreted the statutes, we must consider whether there were substantial controversies as to material facts which should have resulted in the case being tried on the merits.

 The facts essential for recovery by appellee are:

(1) the contractor received payment;

(2) all valid lienable claims were not paid;

(3) contract proceeds have been diverted to a purpose other than payment of valid lienable claims;

(4) the individual against whom personal judgment is sought was the managing officer.

Most of the essential facts could be inferred from what was before the trial court in the form of depositions or documents as exhibits and is now before us on appeal. But a judge may not, on a motion for summary judgment, draw fact inferences unless admitted facts justify but a single inference. See *Perry v. Green,* Okl., 468 P.2d 483 (1970); *Empire Electronics Co. v. United States,* 2d Cir., 311 F.2d 175 (1962); *Boozer v. Arizona Country Club,* 102 Ariz. 544, 434 P.2d 630 (1967); *State v. Ashton Co.,* 4 Ariz.App. 599, 422 P.2d 727 (1967). Even in cases where the trial judge is of the opinion that he will have to direct a verdict for one party or the other on issues that have been raised, he should ordinarily hear the evidence and direct a verdict rather than attempt to try the case in advance on a motion for summary judgment. *Northrip v. Montgomery Ward & Co.,* Okl., 529 P.2d 489 (1974).

Apparently the work of appellee was completed by August 1, 1972, when the lienable claim became due and payable (amended petition, par. 6, line 20). Suit was not commenced until May 1, 1973, nine months subsequent to completion. Unless the lienable claim was perfected within 90 days of completion of the work or the furnishing of materials, the character of the claim was no longer "lienable." Therefore, in order to prevail by summary judgment, appellee in this record must demonstrate that there was a perfected lien at the time he brought suit. The record documents and depositions do not show that appellee had a lienable claim or that there were other lienable claims from which the funds were diverted. Summary judgment, therefore, was not proper—solely on the basis of this fact deficiency. As to the other fact requirements, we think the record leaves no basis for controverting that the contractor received the contract proceeds and that some of them were applied to uses other than for lienable claims. Whether those applications amounted to diversions depends upon the existence of "valid lienable claims." The record does not disclose uncontrovertedly their existence. As to whether appellants were managing officers, the record is adequate to sustain a finding that they were. But to do so requires that the trial court draw fact inferences, a step heretofore mentioned as being ordinarily inappropriate on a motion for summary judgment.

For the reasons set out above, the case is reversed with directions to vacate the summary judgment and to proceed to trial on the merits.

BACON and BRIGHTMIRE, JJ., concur.