**SWAN AIR CONDITIONING COMPANY, a corporation, formerly known as Swan-Sigler, Inc., a corporation, Appellee,**

v.

**CREST CONSTRUCTION CORPORATION, a corporation, Appellant,**

and

**Liberty National Bank and Trust Company of Oklahoma City, a National Banking Association, Intervenor-Appellee,**

and

**Melrose Air Conditioning & Heating Company, Inc., a corporation, and Ray D. Melrose, an Individual, Defendants.**

No. 49046.

Court of Appeals of Oklahoma, Division No. 2.

July 5, 1977.

Rehearing Denied July 28, 1977.

John C. Harrington, Jr., Lytle, Soule & Emery, Oklahoma City, for appellees.

Robert E. Manchester, McClelland, Collins, Sheehan, Bailey & Bailey, Oklahoma City, for appellant.

NEPTUNE, Judge.

To make clear the nature of the action prompting this appeal requires a relation of most of the facts surrounding the case.

This action was brought by material supplier Swan against subcontractor Melrose seeking to foreclose a security interest on accounts receivable and on materials supplied to the subcontractor and to recover the entire proceeds of four checks totaling nearly $30,000 drawn by general contractor Crest on its account at Liberty Bank payable jointly to supplier Swan and subcontractor Melrose. All parties, Melrose, Crest, and Swan are Oklahoma corporations. The checks were delivered to Melrose for work and materials furnished by the subcontractor Melrose on two Arkansas apartment projects. When Melrose sought Swan's consent for division of the funds, as had customarily been done in the past, Swan refused and demanded the whole of the proceeds. Swan then commenced its action to replevy the checks. Melrose surrendered the checks to Swan without a court order but without indorsement. At supplier Swan's request, Liberty Bank exchanged the four checks into two cashier's checks payable to Melrose and Swan. Later, Crest discovered that Melrose and Swan were litigating for the proceeds of the four checks and that Liberty Bank had charged Crest's account for the issuance of the cashier's checks. When the general contractor Crest formally demanded that the bank replace the funds into its account, Liberty intervened in Swan's action against Melrose for the purpose of interpleading the cashier's checks and making Crest an additional defendant. Crest cross-claimed against the bank, asking the court either: (a) for damages of $9,753.32, caused by Liberty's honoring the checks without payees' indorsements, the damage being alleged as the amount due from Melrose to third-party lien claimants against the two apartment projects; or (b) that the lien claimants be paid out of the proceeds of the checks in the custody of the court because these funds are trust funds by statute. The trial court rendered judgment for Swan awarding it unconditionally the total proceeds of the four checks and denying Crest any recovery against Liberty Bank.

Crest appeals from the order overruling its motion for new trial.

I

◼ Appellant's first proposition is: "Where drawer of a check directs his bank to pay to the order of joint payees and the bank honors the check in the absence of the payees' indorsement causing loss to the drawer of the check, the bank is liable to the drawer in the amount of the loss."

Appellee bank's response to appellant's proposition is that "a bank may, upon presentation to it of joint payee checks drawn on it, pay the checks by issuing cashier's checks payable to the same joint payees in the same amount without written indorsements of the payees and without liability to the drawer."

Neither litigant has been able to cite authority which clearly supports its position in the circumstances obtaining here. Appellee bank did offer evidence of the practice of banks issuing cashier's checks in exchange for individual customer's checks where for any reason the indorsement could not be obtained. There is authority supporting protection of the bank that pays without indorsement as long as the actual payee or person authorized by payee receives the money ordered by the drawer to be paid. *Maynard Investment Co. v. McCann*, 77 Wash.2d 616, 465 P.2d 657 (1970). In the cited case, the court said:

"It has long been held that, despite the almost universal custom of requiring a payee to indorse a check before payment, a bank is protected if it pays without indorsement, as long as the payee actually receives the money ordered by the drawer to be paid.

"There is conclusive evidence that all of the funds represented by these two checks were paid to the creditors of the payee, as the payee and transferee had agreed. The cause against the National Bank of Commerce was properly dismissed."

In the case at bar, the bank, by changing the form to cashier's checks, did not alter the rights of the parties named in the four checks. The drawer, Liberty's customer Crest, was not disadvantaged, because its account was immediately chargeable upon presentation and acceptance of the four checks. The payees, Melrose and Swan, were not disadvantaged, because the funds were available to them from the cashier's checks in the same amount. The validity of the customer's order to the bank to make the payment to the two payees was not in question. Thus, the making of cashier's checks payable to the two payees named did not circumvent the purpose of the requirement for indorsements. Indorsements would still be routinely required to negotiate the cashier's checks. 12A O.S.1971, §§ 3-104(2)(b), 3-201 et seq.

In the instant case, the payees effectively received the money ordered by the drawer to be paid even though it was, in the circumstances, put into slightly different form and placed in the custody of the trial court. There is neither allegation nor evidence that the bank was in any way negligent in performing the order drawn by its customer Crest. The trial court's judgment exonerating Liberty is correct.

## II

Appellant's proposition two states:

"Where monies are designated as construction trust funds by statute and are clearly identifiable as such, no creditor claims may be asserted against said trust funds until all suppliers of labor and materials who are the beneficiaries of the trust are paid in full."

Appellant relies upon 42 O.S.1971 §§ 152–153 which read as follows:

"§ 152. Proceeds of building or remodeling contracts, mortgages or warranty deeds as trust funds for payment of lienable claims

"(1) The amount payable under any building or remodeling contract shall, upon receipt by any contractor or subcontractor, be held as trust funds for the payment of all lienable claims due and owing or to become due and owing by such contractors or subcontractors by reason of such building or remodeling contract.

"(2) The monies received under any mortgage given for the purpose of construction or remodeling any structure shall upon receipt by the mortgagor be held as trust funds for the payment of all valid lienable claims due and owing or to become due and owing by such mortgagor by reason of such building or remodeling contract.

"(3) The amount received by any vendor of real property under a warranty deed shall, upon receipt by the vendor, be held as trust funds for the payment of all valid lienable claims due and owing or to become due and owing by such vendor or his predecessors in title by reason of any improvements made upon such property within four (4) months prior to the delivery of said deed.

"§ 153. Payment of lienable claims

"(1) Such trust funds shall be applied to the payment of said valid lienable claims and no portion thereof shall be used for any other purpose until all lienable claims due and owing or to become due and owing shall have been paid.

"(2) If the party receiving any money under Section 152 shall be a corporation, such corporation and its managing officers shall be liable for the proper application of such trust funds."

It is not disputed that the $29,545.44 interpleaded into the trial court by appellee bank are proceeds from appellant to the subcontractor for work performed under a building contract on two Arkansas apartment projects. Under the quoted statute these funds are trust funds for the payment of all valid lienable claims due or to become due through Melrose's activity on the projects for which the remittance was made.

■ The recent development of statutory lien law in Oklahoma as directed by legislative edict and judicial interpretation is to provide greater protection to those whose labor and materials are used in the improvement of real property. In 1968, sections 152(2) & (3) and 153(2) were added to amend the statute as it was adopted in 1965.[1] This amendment broadened the pro-

tection to valid lienholders by making proceeds from mortgages and warranty deeds subject also to the imposition of a statutory trust.

The legislative intent to enlarge the protection granted by these statutes was noted by this court in *Bohn v. Divine,* Okl.App., 544 P.2d 916 (1975). In *Bohn* the issue before us was who, under these statutes, could bring a civil action against a corporation or individuals who had diverted funds from such trust accounts to pay other than valid lienable claims. We rejected the argument that these statutes are penal in nature and should be interpreted narrowly, and stated:

"On their face the statutes, in creating a 'trust' of construction funds, appear to be protective in nature—protective of the rights of all to whom an obligation is owed for the fund's proper disbursement. For this reason, we construe the statutes liberally as though they are remedial statutes."

■ The assignment by Melrose of accounts receivable to appellee Swan did not alter the character of the four checks from being funds possibly impressed with a statutory trust. Whenever property in its original state and form has once been impressed with a trust, no change of that state and form can divest it of its trust character, so long as it remains capable of clear identification. *Ward v. United States,* 139 F.2d 79 (10th Cir. 1943); *Fourth Nat'l Bank v. Eidson,* 205 Okl. 145, 236 P.2d 491 (1947).

■ Appellee Swan, by virtue of its position as assignee of Melrose, acquires no rights equal to or superior to the rights of a valid lien claimant who performed work for or furnished material to Melrose and there-

---

1. Okl.Sess.Laws '65, ch. 58 (April 7, 1965) as adopted contained only the following text:

"Section 1. Proceeds of building or remodeling contracts as trust funds

"The amount payable under any building or remodeling contract shall, upon receipt by any contractor or subcontractor, be held as trust funds for the payment of all lienable claims due and owing or to become due and owing by such contractors or subcontractors

by reason of such building or remodeling contract.

"Section 2. Payment of lienable claims

"Such trust funds shall be applied to the payment of said lienable claims and no portion thereof shall be used for any other purpose until all lienable claims due and owing or to become due and owing shall have been paid."

by generated the payment here involved. Neither the assignment nor the assignor-assignee relationship could serve to subordinate an unpaid valid lienholder's statutory right under the trust provisions. *See United States Fidelity & Guar. Co. v. Sidwell,* 525 F.2d 472 (10th Cir. 1975).

If 42 O.S.1971 § 152(1) impressed a trust upon the monies paid by Crest to the subcontractor Melrose, the trust res retains its character regardless of whether Melrose assigned his accounts receivable under the contract. In this circumstance, the assignee acquires no greater rights than the assignor would have in the absence of such assignment. *National Bank of Commerce v. ABC Constr. Co.,* Okl., 442 P.2d 269 (1966).

The construction trust statutes not only protect the lienholder, but also prevent the injustice of a double payment by an owner, trustee, contractor or subcontractor when placed in a situation comparable to that of appellant here.

Appellees contend that relief should not be granted appellant because Arkansas law affording relief was neither pleaded nor proved. They urge application of the well-settled choice of law rule discussed in *Nuclear Corp. of America v. Hale,* 355 F.Supp. 193 (N.D.Tex.1973), *aff'd,* 479 F.2d 1045 (10th Cir. 1973). The rule is that a materialman's lien is a creature of the law of the state where the real property benefitted by the materials is situated, and that law governs the mode of its operation, even where the contract for supplying materials was made and performed in another state by individuals or corporations who do not reside in the state where the real property is located. *In re Willax,* 93 F.2d 293 (2d Cir. 1937); *Lively v. Evans-Howard Fire Brick Co.,* 115 Okl. 259, 242 P. 773 (1925).

*Nuclear* involved a suit by materialmen for materials furnished on both a Texas and Oklahoma construction project. The court found that Oklahoma law was applicable to any agreement for the supply of materials which benefitted real property in Oklahoma

and that Texas law was applicable to any such agreement which benefitted real property located in Texas. Appellees, in the case before us, argue that because the checks from which funds are sought were issued in connection with real property located in Arkansas, Arkansas law should be applicable, rather than the Oklahoma statutes quoted above.

■■■ The Uniform Judicial Notice of Foreign Law Act,[2] provides that every court in Oklahoma shall take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States. The interpretation of this act by the Supreme Court of Oklahoma enables a court to take judicial notice of a foreign law if that law is pleaded by a party (*Clark v. Clark,* Okl., 380 P.2d 241 [1962]), or if a party gives sufficient notice of the foreign law to the court (*Stockton v. Stockton,* Okl., 299 P.2d 146 [1956]). But appellees assert that Arkansas law "was not pleaded or argued before the trial court and is not before this court on appeal." However, in order to complete this rationale, when a party fails to plead or otherwise give reasonable notice to the court as to the foreign law to be relied on, the court will not take judicial notice of the foreign law, but will apply the law of Oklahoma with the presumption that the foreign law is the same as the law of Oklahoma. *C.I.T. Corp. v. Edwards,* Okl., 418 P.2d 685 (1966); *Clester v. Estate of Heidt,* Okl., 353 P.2d 699 (1960); *Allen v. Allen,* 201 Okl. 442, 209 P.2d 172 (1948), *cert. denied,* 336 U.S. 956, 69 S.Ct. 891, 93 L.Ed. 1110 (1949). By not invoking the privilege accorded by the act, both parties must have their rights determined by the law of Oklahoma. As a result, 42 O.S.1971 §§ 152–153 can be applicable in the instant case. Therefore all valid lien claimants who generated the payment have priority to the proceeds from the two cashier's checks interpleaded into the trial court and the funds are trust funds for the purposes of the statutes.[3]

**2.** 12 O.S.1971 §§ 541–547.

**3.** Oklahoma law may also be deemed applicable by recognition of the distinction existing between the mechanic's lien which attaches to

The trial court's judgment granting possession of the replevined funds, $29,545.44, to Swan and ordering the cashier's checks to be cashed with the proceeds delivered to appellee Swan free and clear of the claims of all parties to the action can be affirmed only if appellant Crest failed to prove that there were valid lienable claims due or to become due from claimants whose work or materials generated the payment. Such proof would impress the funds with the trust character.

 The burden of proof on the issue of whether there existed valid lienable claims on the two apartment projects is on Crest. The president of Crest testified that outstanding debts to be covered by the four checks issued from Crest to Swan and Melrose totaled $9,753.32. He further explained that among these were two claims which have been asserted against Crest—one by Crane Supply Company, the other by L. A. King Corporation—and that these two third-party claimants have filed liens against Crest in the state of Arkansas. He testified that as a result of these claims two suits were pending against Crest. However, this is the extent of Crest's proof relating to lienable claims. While an exhibit prepared by Crest which provided a schedule of all unpaid suppliers of labor or materials to be covered by the four checks was shown to the president of Crest for identification, it was never offered and admitted into evidence.

The record does not reveal that Crest asked for findings of fact; and the journal entry of judgment is silent regarding the trial court's findings as to the existence of lienable claims, and is silent as to why the trial court refused relief to Crest.

We think the proof is such that the trial court could have found it inadequate to support a finding that there were lienable claims other than Swan's properly chargeable against the proceeds of the trust funds. From the record we are unable to determine whether this critical issue was passed upon by the trial court.

Where, from an examination of the entire record, it is impossible to ascertain whether the question presented for review was passed upon by the trial court, the judgment will be affirmed. *Hodgson v. Winne Mortgage Co.,* 52 Okl. 759, 153 P. 671 (1915).

Affirmed.

BRIGHTMIRE, P. J., and BACON, J., concur.

---

the realty and the statutory trust fund which, by a liberal interpretation of the statute, arose from Crest's payment to Melrose and is comprised of the funds interpleaded into the trial court. Because the parties were all Oklahoma residents and the trust funds were properly before an Oklahoma court, application of Oklahoma law is reasonable. A brief discussion of this distinction appears in 53 Am.Jur.2d Mechanics' Liens § 1, at 514, n. 6 (1970):

"6. *State v. Tabasso Homes,* 42 Del. 110, 28 A.2d 248, speaking of the statute as a corollary or supplement to the Mechanic's Lien Law:

"The statutory trust impressed upon payments by an owner to a contractor or subcontractor, for the benefit of unpaid subcontractors, materialmen, or laborers, although set forth within the general framework of the lien law, is not a true mechanic's lien. Even though the purpose of both is to provide protection for those whose services and materials enhance the value of real property, a mechanic's lien attaches to the land and the buildings erected on it, while the statutory trust is impressed upon the fund and not upon the realty itself. By its very nature, a mechanic's lien is restricted to real property within the state. 26 Fordham L.Rev. 716."