PER CURIAM:
 

 The summary judgment entered by the bankruptcy court and affirmed by the district court is affirmed based upon the well reasoned and clearly stated Memorandum Opinion entered by the Honorable Patrick E. Higginbotham on August 22, 1979, appended hereto.
 

 
 *373
 
 APPENDIX
 

 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS _DALLAS DIVISION_
 

 THOMAS HUGH BELL, Appellant V. CAREY LUMBER CO., Appellee
 

 CA-78-1053-G
 

 On Appeal in Bankruptcy,
 

 No. BK-76-603-G
 

 MEMORANDUM OPINION
 

 I.
 

 This is an appeal from a summary judgment entered by the bankruptcy court in favor of Carey Lumber Co. (“Carey”) holding that certain debts owed to Carey by the bankrupt, Thomas Bell (“Bell”) and evidenced by seven Oklahoma state court judgments are not dischargeable in bankruptcy under section 17(a)(4) of the Bankruptcy Act, 11 U.S.C. § 35(a)(4) (1976).
 
 [1]
 

 Prior to his bankruptcy and at all times relevant to the issues presented here, Bell was engaged in the residential construction business as the managing officer of Tom Bell Homes, Inc. In 1975, seven construction mortgages executed by Tom Bell Homes, Inc. were the subjected foreclosure actions instituted in the District Court of Oklahoma County, Oklahoma by construction lenders, in which actions several creditors, including Carey, (which had supplied materials for the homes on credit) holding mechanic’s and materialmen’s liens were joined as parties. In each of the seven Oklahoma actions, Carey asserted claims against Bell seeking to hold him personally liable under the Oklahoma Lien Trust Statutes, 42 O.S. §§ 152, 153 (1971)
 
 [2]
 
 for debts owed Carey by Tom Bell Homes, Inc. As to each of these claims judgments were entered in favor of Carey reciting that Bell received construction funds in his capacity as managing officer of Tom Bell Homes, Inc.; that Bell held those funds as trust funds; that Bell misapplied those funds; and that, consequently, Bell was personally liable to Carey under the Oklahoma Lien Trust Statutes. The Oklahoma judgments were reduced to judgment in Texas following Bell’s move to Texas.
 

 Several months after Bell filed a voluntary petition in bankruptcy in Texas in October, 1976, Carey filed this suit to determine the dischargeability of the debts evidenced by the Oklahoma judgments.' In its consideration of Carey’s motion for summary judgment, the bankruptcy court considered three issues: 1) whether the debts in question were created by fraud, embez
 
 *374
 
 zlement, misappropriation or defalcation; 2) if so, whether they were incurred by Bell while acting as “an officer or in any fiduciary capacity”; and 3) whether the question of dischargeability could be determined on motion for summary judgment without a specific finding of conscious and willful wrongdoing other than the finding of “misapplication” contained in the Oklahoma judgments. All of these issues were resolved in favor of Carey, and Carey’s motion for summary judgment was granted. On appeal, Bell challenges the bankruptcy court’s resolution of each of these issues, and urges in addition the following points of error: 1) that the bankruptcy court erred in granting the motion because the alleged trust created was not an express trust and hence not covered by section 17(a)(4) of the Bankruptcy Act; 2) that the bankruptcy court should have required proof of the true character of the indebtedness; 3) that Carey was not a proper beneficiary under the Oklahoma Lien Trust Statutes; and 4) that summary judgment should not have been granted because genuine issues of material fact existed as to the dischargeability of debts owed to Carey by Bell.
 

 II.
 

 Bell’s argument that Carey is not a party that may claim the protection of the Oklahoma Lien Trust statutes may. be quickly dispatched. Bell argues that, despite a line of decisions by Oklahoma courts to the effect that the lien trust statutes benefit subcontractors and materialmen, the statutes should properly be read as benefiting only lenders and owners, who do not enjoy the statutory liens provided for subcontractors and materialmen. Whatever abstract merit this argument may have, it has no legal merit here, as this is an issue of state law that has been settled by the state courts of Oklahoma.
 
 See, e. g., Bohn v. Devine,
 
 544 P.2d 916 (Okl.App.1975);
 
 United States Fidelity & Guaranty Co. v. Sidwell,
 
 525 F.2d 472 (10th Cir. 1975). This court may not overturn this line of decisions with its own view of the proper scope of the Oklahoma lien trust statutes.
 

 III.
 

 Equally unavailing is Bell’s argument that the trust created by the Oklahoma statutes was a trust
 
 ex maleficio
 
 that is not within the application of section 17(a)(4) of the Bankruptcy Act. The major premise of Bell’s syllogistic argument — namely, that section 17(a)(4) does not apply to fiduciary relationships arising out of equitable or implied trusts but only to true trusts — is correct.
 
 See In re Thornton,
 
 544 F.2d 1005 (9th Cir. 1976);
 
 Matter of Kawczynski,
 
 442 F.Supp. 413 (W.D.N.Y.1977). The minor premise of the syllogism, however — that the trust created by the Oklahoma lien trust statutes is a trust
 
 ex maleficio
 
 — is incorrect. The trust created by the lien trust statutes is an express trust. The statutes expressly and clearly impose a trust relationship upon construction mortgagors. Like the New York statute involved in
 
 Matter of Kawczynski, supra,
 
 the Oklahoma statutes clearly define the trust res and charge the trustee with affirmative duties in applying the trust funds.
 
 See also Allen
 
 v.
 
 Romero,
 
 535 F.2d 618 (10th Cir. 1976);
 
 United States Fidelity & Guaranty Co.
 
 v.
 
 Sidwell, 525
 
 F.2d 472 (10th Cir. 1975);
 
 Swan v. Crest Construction Corp.,
 
 568 P.2d 1330 (Okl.App.1977);
 
 Nuclear Corp. of America v. Hale,
 
 355 F.Supp. 193 (N.D.Tex.),
 
 aff’d
 
 (mem.), 479 F.2d 1045 (1973);
 
 In re Angelle,
 
 425 F.Supp. 823 (W.D.La.1977)
 
 *
 
 ;
 
 In re Ketchum,
 
 409 F.Supp. 743 (S.D.N.Y.1975). Thus while created by statute and lacking a trust agreement executed by the parties, the trust created by the Oklahoma lien trust statutes is an express trust that effected a fiduciary relationship between Tom Bell Homes, Inc. (and its managing officer, Bell) and Carey.
 

 Virtually identical to this issue, though phrased in different language and characterized by a slightly different analyt
 
 *375
 
 ical focus, is Bell’s argument that any fiduciary relationship between himself and Carey is not within the coverage of section 17(a)(4) because it arose only, if at all, upon misappropriation of the funds and not earlier. Again, the major premise of the argument is correct but the minor premise is not. It is true that, in order to fall within the ambit of section 17(a)(4) a fiduciary relationship must have arisen before and not as a result of misappropriation of trust funds.
 
 See In re Ketchum, supra; Allen v. Romero, supra.
 
 Here the fiduciary relationship between Bell and Carey established by the statute came into being upon receipt by Tom Bell Homes, Inc. of funds under the construction mortgages. The statutes make clear that these funds are to be held in trust even though there may be no beneficiary at the time they are received (the funds are to “be held as trust funds for the payment of all valid lienable claims due and owing
 
 or to become due and owing”).
 
 Thus the trust and the consequent fiduciary duties came into being upon receipt by Tom Bell Homes of construction funds and not, as contended by Bell, upon their later misappropriation.
 

 IV.
 

 Bell’s next argument is that his debt to Carey was not “created” by any act of misappropriation or defalcation, but rather was created when Tom Bell Homes purchased materials on credit from Carey. This literal reading of section 17(a)(4) was considered and rejected by the court in
 
 In re Ketchum, Jr. and Associates,
 
 409 F.Supp. 743 (S.D.N.Y.1975) in circumstances similar to those in this case. The court in
 
 Ketchum
 
 reasoned that, while a contractual debt was indeed created when the bankrupt contractor purchased services from the plaintiff subcontractor, another obligation, defined largely by a New York law similar to the Oklahoma lien trust statute, was created when the contractor received funds from a third party that it was legally required to hold in trust for persons holding, or who later would hold valid lienable claims. That reasoning is persuasive and it is applicable here; it has apparently received tacit approval in many of the cases cited in this discussion. The Fifth Circuit also rejected such a literal reading of section 17(a)(4) in
 
 John P. Maguire Co. v. Herzog,
 
 421 F.2d 419 (5th Cir. 1970) with the following language:
 

 Appellant contends that the debt due ap-pellee was purely contractual, and not created by a misappropriation. This novel contention has little merit. Although it is true that the debt due appellee originally arose out of [the bankrupt’s] contractual obligation to appellee, it is the direction and application of [funds] to creditors other than appellee, to whom the payments were due, that is the basis of the present suit. If appellant’s contention were upheld, § 17(a)(4) would be rendered almost totally useless for the majority of debts originally arise from some sort of contractual agreement.
 

 The debt owed by Bell to Carey was thus “created” by Bell’s misappropriation of construction funds for purposes of section 17(a)(4).
 

 V.
 

 Bell next argues that a holding of nondischargeability under section 17(a)(4) requires a finding, not made by the bankruptcy court here, that the bankrupt intentionally diverted, stole, or misappropriated funds for his own use. The argument has no support either in the statute or in the cases applying it.
 

 In the leading case of
 
 Central Hanover Bank & Trust Co. v. Herbst,
 
 93 F.2d 510 (2d Cir. 1937), and again in
 
 In re Hammond,
 
 98 F.2d 703 (2d Cir. 1938),
 
 cert. denied,
 
 305 U.S. 646, 59 S.Ct. 149, 83 L.Ed. 418 (1939), the Second Circuit rejected the contention that a holding of nondischargeability under section 17(a)(4) must be predicated on a finding of intentional wrongdoing by the bankrupt. In
 
 Herbst
 
 a foreclosure receiver had spent an interim allowance before the order awarding it was reversed on appeal. When the receiver was adjudicated a bankrupt, the fee in question was held nondis-chargeable under section 17(a)(4) despite the absence of any indication of deliberate wrongdoing.
 

 Bell relies upon language in
 
 In re Bernard,
 
 87 F.2d 705 (2d Cir. 1937) to the effect that misappropriation under section 17(a)(4)
 
 *376
 
 “must be due to a known breach of the duty, and not to mere negligence or mistake.” 87 F.2d at 707. In that case a corporate director’s diversion of funds from an insolvent corporation for payment of his personal debts was held to render certain debts owed to creditors nondischargeable in bankruptcy. The court limited its holding by noting that if the bankrupt had not known that the corporation was insolvent then the debts in question might have been dischargeable in bankruptcy. This dicta was held to apply only to mistakes of fact in
 
 In re Hammond, supra.
 
 Even assuming that the rule that a mistake of fact may take a misappropriation out of the ambit of 17(a)(4) is still valid law, it has no application here, because Bell is charged with knowledge of his legal duties under the lien trust laws, and he has suggested no possible mistake of fact that might have excused him from that duty.
 

 Moreover, there is doubt as to the continued validity of the dicta in
 
 In re Bernard
 
 that misappropriation under section 17(a)(4) may not be found on the basis of “mere negligence or mistake.” In
 
 In re Hammond, supra,
 
 a debt incurred by a bankrupt corporate director who had unlawfully taken advantage of a corporate opportunity that the corporation had been financially unable to take advantage of was held nondischargeable in bankruptcy under section 17(a)(4), despite a complete absence of evidence that the director’s wrongdoing had been intentional. More recently, in
 
 Matter of Kawczynski, supra,
 
 the court wrote that “ ‘[defalcation’ has been interpreted by the Second Circuit to include innocent defaults.” 442 F.Supp. at 418. Thus there is no requirement that a misappropriation must be shown to have been intentional in order to be covered by section 17(a)(4).
 

 A corollary of Bell’s argument that misappropriation or defalcation under section 17(a)(4) must be shown to be intentional is his argument that misappropriated funds must be shown to have been diverted by the bankrupt to his own use. This argument, too, in the circumstances of this case, is without merit.
 

 There is some discussion (in cases not cited by Bell) regarding a requirement that funds misappropriated under section 17(a)(4) must have been diverted to the bankrupt’s own personal benefit.
 
 See, e. g., Matter of Whitlock,
 
 449 F.Supp. 1383 (W.D.Mo.1978);
 
 Kaufman v. Lederfine,
 
 49 F.Supp. 144 (S.D.N.Y.1943). But the issue is discussed in these cases only as it relates to whether a bankrupt individual should be held liable for the debts of a corporation of which he was once a director or officer. Some of the cases hold that a director may not be held liable for the debts of a corporation absent a showing of diversion of corporate funds for the bankrupt’s personal use, for the apparent reason that without such evidence the bankrupt has not breached a fiduciary duty owed to the corporation and its creditors. The real issue in these cases, then, is whether the bankrupt breached a fiduciary duty such that he may be held liable for the debts of a corporation.
 
 See Matter of Whitlock, supra
 
 at 1388. That question is not present here; the existence of a fiduciary duty is undisputed, having been imposed by statute, and the failure to meet that duty is likewise undisputed. Thus under the circumstances of this case there was no need for Carey to show that Bell’s use of construction mortgage funds was for his own personal gain. Even if there were such a requirement, Bell failed to come forth -with any evidence that his use of the funds was not for his personal gain. (See part VI below).
 

 VI.
 

 Bell also urges that it was error for the bankruptcy court to consider only the state court judgments in determining the dis-chargeability of the debts, and that the court’s failure to examine other evidence constituted an improper delegation of powers vested exclusively in the bankruptcy court. In this regard, Bell points to several recent decisions that hold that a bankruptcy court determining a question of discharge-ability is not bound by prior state court judgments but rather has exclusive jurisdiction to resolve the issue.
 

 
 *377
 
 In its recent decision in
 
 Brown v. Felsen,
 
 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the Supreme Court held that a bankruptcy court was not barred by the doctrine of res judicata from inquiring into the nature of a debt of the bankrupt in order to determine the dischargeability of the debt. The circumstances of the case were in several respects the reverse of those present here. The state court judgment did
 
 not
 
 reflect the nature of the debt [which the petitioner claimed had been procured by fraud and was nondischargeable under §§ 17(a)(2) and (4)] and the bankruptcy court held that it was barred by the doctrine of res judicata from allowing inquiry into the nature of the debt. The district court and the Tenth Circuit affirmed. The Supreme Court reversed and held that the Bankruptcy Court was not barred from determining the nature of the debt, noting that the bankrupt himself had in effect disturbed the repose of the state court judgment by asserting the new defense of bankruptcy to the debt, and that, consequently, the bankrupt could not seek the protection of res judicata. The court also noted that a contrary decision would force section 17 questions to be resolved by state courts, a result plainly contrary to the intention of the drafters of the Bankruptcy Act and its recent amendments. The court discussed the 1970 amendments to § 17 of the Bankruptcy Act, noting that one of the chief purposes of the amendment “was to take these § 17 claims away from state courts that seldom deal with the federal bankruptcy laws and to give those claims to the bankruptcy court so that it could develop expertise in handling them.” 442 U.S. at 136, 99 S.Ct. at 2211.
 

 Bell also cites
 
 In re Houtman,
 
 in which the Ninth Circuit announced a similar rule. The court there affirmed a bankruptcy court’s finding of nondischargeability, carefully noting that the bankruptcy court had not held itself bound by a prior state court judgment. The following portions of the decision are apposite here:
 

 Were we to accept the view that the bankruptcy judge considered himself compelled by the state court documents presented to him to find the debt not dischargeable we would agree that the district court’s order would have to be reversed. The 1970 Amendments to the Bankruptcy Act imposed upon the bankruptcy courts the exclusive jurisdiction to determine dischargeability. As we read those Amendments there is no room for the application of the technical doctrine of collateral estoppel in determining the nondischargeability of debts described in section 17(a)(2), (4), and (8) of the Bankruptcy Act. This does not mean that the documents which officially enshrine the state court proceedings may not be considered by the bankruptcy judge as establishing the nondischargeability of a debt. What is required is that the bankruptcy court consider all relevant evidence, including the state court proceedings, that is offered by the parties, or requested by the court, and on the basis of that evidence determine the nondischargeability of judgment debts which the creditors contend are described in section 17(a)(2), (4), and (8).
 
 See In re Mountjoy,
 
 368 F.Supp. 1087, 1096 (W.D.Mo.1973). 568 F.2d 651 at 653-54 (9th Cir.).
 

 This court, of course, has no quarrel with the proposition, enunciated in these cases and urged by Bell, that a bankruptcy court faced with a claim of nondischargeability under § 17 and presented with a state court judgment evidencing a debt is not bound by the judgment and is not barred by res judicata or collateral estoppel from conducting its own inquiry into the character and, ultimately, the dischargeability of the debt. Like the Ninth Circuit in
 
 In re Houtman,
 
 this court would be constrained to reverse the bankruptcy court’s decision if the bankruptcy judge had held himself to be bound by the state court judgment. That, however, is not the case. The bankruptcy judge here was presented with state court consent judgments as part of a motion for summary judgment on the claim of nondischargeability (while Bell characterizes the judgments throughout his brief as default judgments, they are all signed by attorneys acting in his behalf).
 
 *378
 
 The judgments contained rather detailed recitations of the findings upon which they were based, findings which closely paralleled the language of § 17(a)(4) of the Bankruptcy Act. The bankruptcy judge quite properly considered these judgments as evidence in connection with the motion for summary judgment.
 

 Summary judgment practice in bankruptcy court is, under Bankruptcy Rule 757, governed by Rule 56, Fed.R.Civ.P. Under Rule 56, after the motion by Carey accompanied by the state court judgments, Bell had the burden of coming forth with evidence tending to show the existence of fact issues with regard to the recitation in the state court judgments.
 
 See, e. g., Menard v. Penrod Drilling Co.,
 
 538 F.2d 1084 (5th Cir. 1976). Bell failed to offer such evidence by affidavit or otherwise in the bankruptcy court, and he may not now argue that summary judgment was improper simply by asserting that fact questions existed.
 

 Thus Bell’s arguments concerning the inappropriateness of the doctrine of res judicata and the impropriety of the bankruptcy court’s placing sole reliance on the state court judgments miss the mark. Res judicata is not the issue in this appeal; Rule 56 is. The bankruptcy court was correct in determining that no issue of fact existed as to the recitations in the state court judgments. It therefore properly accepted these recitations as true, and correctly found that they required the legal conclusion that the debt owed Carey by Bell was nondischargeable in bankruptcy • under § 17(a)(4). The bankruptcy judge followed the correct legal standard in entering summary judgment in favor of Carey.
 

 VII.
 

 Bell’s points of error having been rejected, the summary judgment entered by the able bankruptcy court is therefore AFFIRMED. This decision does not, as Bell contends, place a contractor receiving funds from its construction mortgagee in an untenable situation. Bell could have avoided personal liability and the finding of nondis-chargeability by simply segregating funds received from the construction mortgagee and applying them to payment of those holding valid lienable claims under Oklahoma law. He would then have been entitled to a full discharge of his debts in bankruptcy. Thus while the result is somewhat harsh, particularly in the absence of any finding of deliberate wrongdoing by Bell, it was easily avoidable.
 

 /s/ Patrick E. Higginbotham
 

 PATRICK E. HIGGINBOTHAM UNITED STATES . DISTRICT JUDGE
 

 [1]
 

 . The section provides: “A discharge in bankruptcy shall release a bankrupt from all of his provable debts . except such as . (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity . . .” This provision is essentially carried over in section 523(a)(4) of the Revised Bankruptcy Act that will take effect on October 1, 1979.
 

 [2]
 

 . “§ 152. Proceeds of building or remodeling contracts, mortgages or warranty deeds as trust funds for payment of lienable claims.
 

 (2) The monies received under any mortgage given for the purpose of construction or remodeling any structure shall upon receipt by the mortgagor be held as trust funds for the payment of all valid lienable claims due and owing or to become due and owing by such mortgagor by reason of such building or remodeling contract.
 

 “§ 153. Payment of lienable claims.
 

 (1) Such trust funds shall be applied to the payment of said valid lienable claims and no portion thereof shall be used for any other purpose until all lienable claims due and owing shall have been paid.
 

 (2) If the party receiving any money under Section 152 shall be a corporation, such corporation and its managing officers shall be liable for the proper application of such trust funds.”
 

 *
 

 [In re
 
 Angelle,
 
 425 F.Supp. 823 (W.D.La.1977) was reversed by this court in
 
 Matter of Angelle.
 
 610 F.2d 1335 (5 Cir. 1980) (holding that under Section 17(a)(4), a fiduciary relationship is created only by a technical trust which arises prior to and without reference to the act creating the debt). The district court’s reasoning in the instant case accords with this court’s decision in
 
 Matter of Angelle.]