In re Robert B. WEAVER, a/k/a Bob Weaver, Debtor,

CAREY LUMBER COMPANY, Plaintiff,

v.

Robert B. WEAVER, a/k/a Bob Weaver, Defendant.

Bankruptcy No. 81–1638–B.
Adv. No. 81–0281.

United States Bankruptcy Court, W.D. Oklahoma.

July 27, 1984.

Jack L. Kinzie and L. Gene Gist of the firm Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, Okl., for Carey Lumber Co.

James S. Matthews, Jr., Oklahoma City, Okl., for Robert B. Weaver.

### MEMORANDUM DECISION AND ORDER

ROBERT L. BERRY, Bankruptcy Judge.

By this adversary proceeding plaintiff, Carey Lumber Company (hereinafter "Carey"), seeks to: 1) deny, pursuant to 11 U.S.C. § 727, the discharge to the debtor; and 2) determine a debt to be nondischargeable pursuant to 11 U.S.C. § 523. Before the Court is Carey's motion for summary judgment pursuant to Rule 7056 Fed.R. Bankr.P. and Rule 56 Fed.R.Civ.P., that there exists no genuine issue of material

fact and that it is entitled to prevail as a matter of law. Summary judgment is not a substitute for the trial of disputed fact issues; a motion for summary judgment lies only when there is no genuine issue of material fact. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027 (10th Cir.1978). The parties have submitted stipulations of fact which we adopt and incorporate herein by reference, the pertinent of which are summarized as follows:

1. The debtor, Robert B. Weaver (hereinafter "Weaver"), was hired by Hefner Village as a general contractor to repair certain roofs.

2. Weaver was to be paid from the proceeds attributable to a claim filed by Hefner Village with its insurance company.

3. Weaver collected in excess of $200,000.00 from Hefner Village.

4. Weaver was to be responsible for paying the subcontractors and materialmen required for the repair work out of the proceeds he received from Hefner Village.

5. Carey supplied to Weaver on an open account basis several thousand dollars worth of roofing materials to be used on the Hefner Village project.

6. Carey subsequently filed an action in state court for the recovery of those amounts due and owing under said open account.

7. A trial on the matter was held and judgment in favor of Carey was awarded in the amount of $10,737.61, plus interest, costs and attorney's fees. (The sum of $14,737.61 having been filed by Carey as an unsecured claim in this bankruptcy).

8. Carey did not file a materialman's lien for the materials it supplied as a subcontractor on the Hefner Village project.

Carey argues that the debt owed it by Weaver is excepted from discharge in bankruptcy pursuant to 11 U.S.C. § 523(a)(4), "for fraud or defalcation while acting in a fiduciary capacity".

Our first inquiry then, before even reaching the issue of whether summary judgment is appropriate, is a two-pronged one. First, was there a "fraud" or "defalcation" committed; second, was the alleged "fraud" or "defalcation" committed while in a "fiduciary capacity".

"Defalcation" has been defined as "[t]he failure of one who has received monies in trust to pay it over as he ought. It is a broader word than fraud, embezzlement or misappropriation, and covers cases where there was no fraud, embezzlement, or willful misappropriation on the part of the bankrupt." *In re Herbst*, 22 F.Supp. 353, 354 (S.D. N.Y. 1937). In affirming the ruling of the district court, Judge Learned Hand, in *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir.1937), noted that although colloquially, the word "defalcation" ordinarily implies some moral dereliction, in a bankruptcy context it may include innocent default, including all fiduciaries, who for any reason were short in their accounts. "[W]hen a fiduciary takes money [in our case, material] upon a conditional authority which may be revoked and knows at the time that it may, he is guilty of 'defalcation' though it may not be a 'fraud', or even an 'embezzlement', or perhaps not even a 'misappropriation'." *Id.* at 512. It is our opinion therefore that Weaver committed a "defalcation".

A finding of "defalcation" does not end the matter. In order to effect a complete resolution we must address the second prong of our inquiry, namely, whether the "defalcation" was committed while acting in a "fiduciary capacity".

■ The term "fiduciary capacity" as employed in 11 U.S.C. § 523(a)(4) has been held to connote the idea of trust or confidence, which relationship arises whenever one's property is placed in the custody of another. *In re Romero*, 535 F.2d 618 (10th Cir.1976). Furthermore, the fiduciary relationship must be shown to exist prior to the creation of the debt in controversy. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re Romero, supra*. Finally, the fiduciary relationship is held to be limited to express and technical trusts. *Davis v. Aetna Acceptance Co., supra; In re Romero, supra; In*

*re Niven,* 32 B.R. 354 (Bkrtcy.W.D.Okla. 1983); *In re Cairone,* 12 B.R. 60 (Bkrtcy. D.R.I.1981).

■ The question of who is a fiduciary for purposes of § 523(a)(4) is one of federal law. *Matter of Angelle,* 610 F.2d 1335 (5th Cir.1980). However, state law plays an important role in determining whether a specific case involves an express trust. *Matter of Angelle, supra; In re Cairone, supra. Cf. Jaffke v. Dunham,* 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957) (determination of whether trust established in bankruptcy proceeding under § 70(a)(4), 11 U.S.C. § 110(a)(4), is one of state law).

The express trust on which Carey relies is provided for pursuant to 42 O.S. 1981 §§ 152 and 153.[1] There is no doubt that these statutes create an express trust. *See Carey Lumber Co. v. Bell,* 615 F.2d 370, 374 (5th Cir.1980), and cases cited therein. The issue becomes whether Carey is a beneficiary of the statutes, thereby enabling recourse to 11 U.S.C. § 523(a)(4). This issue is perforce linked with the appropriateness of rendering summary judgment.

In opposition to the motion for summary judgment Weaver raises, in order of importance, three propositions: 1) material issues of fact remain unresolved by the record before this Court; 2) Carey is not a beneficiary of the statutory trusts for the reason that the work performed by Carey was for "repair" and not for "building or remodeling"; and 3) Carey is not a beneficiary of the statutory trusts for the reason that it failed to properly perfect a materialman's lien on the Hefner Village project.

As to the first of Weaver's propositions, upon review of the file, the judgment of the state court, the transcript of Weaver's deposition and the briefs and authorities submitted by the parties, we are unconvinced that material issues of fact remain unresolved. The stipulation entered into between the parties demonstrates that Weaver received in excess of $200,000.00 for work performed. It is obvious that Carey has not been paid the sums owed it for materials furnished to Weaver—thereby precipitating the state court action. The money went for some purpose; how much and precisely to whom does not concern us. What does concern the Court is the fact that it went elsewhere than for the payment of a potentially "lienable" claim. We therefore find the first of Weaver's propositions to be without merit.

The second of the propositions is that as the work was for "repair" and the applicable statutes speak to "building or remodeling", Carey cannot benefit from imposition of the trust statutes.

■ The term "building" is "[c]omprehensive, generic, and, in its use, may be ambiguous, having no universal, inflexible meaning which will apply to all cases, but depending for its meaning upon the peculiar facts and circumstances of each particular case, the intention of parties or *the aim of a particular statute ....*" *Griffin v. Holland,* 191 Okla. 417, 418–19, 131 P.2d 113, 115 (1942); *Lowden v. Jefferson County Excise Board,* 190 Okla. 276, 277, 122 P.2d 991, 993 (1942) (both quoting 12 C.J.S. Brokers at 378) (emphasis supplied). As the development of statutory lien law in Oklahoma has been to provide greater protection to those whose labor and materials are used in the improvement of real property, *Swan Air Condition. Co. v. Crest Const. Corp.,* 568 P.2d 1330, 1334 (Okla. 1977), clearly the supplying of materials to a general contractor enables one to enjoy

---

**1.** Title 42 O.S. 1981 § 152 provides in pertinent part:

(1) The amount payable under any building or remodeling contract shall, upon receipt by any contractor or subcontractor, be held as trust funds for the payment of all lienable claims due and owing or to become due and owing by such contractor or subcontractors by reason of such building or remodeling contract.

Title 42 O.S. 1981 § 153 provides in pertinent part:

(1) Such trust funds shall be applied to the payment of said valid lienable claims and no portion thereof shall be used for any other purpose until all lienable claims due and owing or to become due and owing shall have been paid.

the protection of the lien trust statutes. Thus, we find ourselves in disagreement with and accordingly reject the second proposition.

The final of Weaver's propositions, that Carey is not entitled to the benefit of the lien trust statutes owing to its failure to properly perfect a materialman's lien, is the true salient issue before this Court.

■ Both 42 O.S. 1981 §§ 152 and 153 speak to "lienable claims". Weaver's argument purports that since Carey never perfected a materialman's lien on the Hefner Village project, which fact Carey does not dispute, it is not a beneficiary of the statutory trust fund. In support of this, Weaver cites us to *Bohn v. Divine*, 544 P.2d 916 (Okla.Ct.App.1975). The following language is contained in *Bohn:*

> Unless the lien claim was perfected within 90 days of completion of the work or the furnishing of materials, the character of the claim was no longer "lienable". Therefore, in order to prevail [a party relying on §§ 152 and 153] must demonstrate that there was a perfected lien at the time he brought suit.

*Id.* at 920. The reference to the 90 day period is a reflection of the requirement of 42 O.S. 1981 § 143.[2] This Court is in wholehearted agreement with the reasoning and holding of the *Bohn* Court. However, we do not read *Bohn* to say that *in all instances* must a prospective beneficiary of the lien trust statutes have perfected a lien in order to receive the benefits of §§ 152 and 153. We read it to say that at the time suit seeking to enforce the statute is brought, there must be in existence a "lienable claim".[3] Therefore, had the facts in *Bohn* been altered to provide that suit had been brought within the requisite 90 days, a "lienable claim" would have been in existence. But since suit was not brought until after expiration of the 90 days, without a lien having been filed, there could be no "lienable claim".

It is Weaver's contention that since suit in this matter was brought subsequent to the expiration of the 90 day period of § 143, there can be no "lienable claim" for purposes of §§ 152 and 153. Carey's response to this may be summarized thusly: while the major premise of Weaver's syllogism is correct; there must be in existence a "lienable claim", the minor premise is incorrect; that Carey may not benefit from §§ 152 and 153. It is Carey's position that what Weaver has excised from his chain of argument, and which therefore distinguishes the instant matter from *Bohn,* is the existence of a valid state court judgment. According to Carey, it is the presence of this judgment which creates the requisite "lienable claim".

Judgment in the state court action was rendered on August 14, 1981. It was entered on the judgment docket in the office of the county court clerk on August 19, 1981. Upon the docketing of the judgment, said judgment became a lien on Weaver's real estate, pursuant to 12 O.S. 1981 § 706.[4] This judgment lien, argues Carey, is a "lienable claim" for purposes of §§ 152 and 153, thereby rendering Carey a beneficiary of these statutes.

In determining the interpretation which we are to give to state statutes we are of course guided by those cases which have

---

2. The pertinent part of which provides:

   Any person who shall furnish any such material or lease or rent equipment used on said land or perform such labor as a subcontractor ... may obtain a lien upon such land or improvements ... by filing with the county clerk of the county in which the land is situated, within ninety (90) days after the date upon which material or equipment used ... was last furnished or labor last performed ... a statement [containing the necessary itemization].

3. As in the *Bohn* Court, we are not faced with and therefore do not address the issue of the potential problem of *filing* a suit while there is in existence a "lienable claim" with the actual *trial* not occurring until the potential for a "lienable claim" has lapsed with a lien not having been filed.

4. Section 706 provides:

   A. Judgments of courts of record of this state ... shall be liens on the real estate of the judgment debtor within a county after a certified copy of such judgment has been filed in the office of the county clerk in that county.

had occasion to review and construe them. In that regard, in Oklahoma it has been held that

> [l]iens can be created either by contract or by law. A statutory lien ... stands in derogation of the common law. It must hence be strictly confined to the ambit of the enactment giving it birth. A lien that is not provided for by the clear language of the statute cannot be created by judicial fiat. The terms prescribed by statute cannot be ignored. They are the measure of the right and of the remedy.

*Riffe Petroleum Co. v. Great Nat. Corp., Inc.*, 614 P.2d 576, 579 (Okla.1980) (citations omitted).

▮ After a review of the "clear language of the statute" it appears to us certain that the "trust funds" which §§ 152 and 153 speak to are those funds which are to pay only those "lienable claims" which are directly attributable to a building or a remodeling contract. A judgment lien is insufficient. While the genus is correct—both liens are pursuant to statute, the species is incorrect. Arguably, the judgment lien which currently encumbers Weaver's real estate is an indirect result of a building contract; however, we do not believe it is a "lienable claim due and owing *by reason of* a building or remodeling contract". Rather the lien must be of that type specifically enumerated in 42 O.S. 1981 §§ 141–153. Liens created pursuant to other titles of the Oklahoma Statutes will not suffice. In attaining such a construction, we are strictly confining the lien "to the ambit of the enactment giving it birth." *See also Bovasso v. Sample*, 649 P.2d 521 (Okla. 1982), wherein the plaintiff brought suit on a residential construction contract, alleging that upon rendition of judgment plaintiff was entitled to have said judgment determined to be a lien against the real property, and for foreclosure of said lien. Quoting the above language from *Riffe Petroleum, supra,* the Court held that a judgment

declaring a lien and ordering foreclosure and sale could not be rendered unless "[t]he account and lien statement [the lien involved was pursuant to 42 O.S. 1981 § 142 [5]] have been filed at the time, at the place and in the manner provided by the statutes pursuant to which it is created." 649 P.2d at 523 (citations omitted). Finding that Carey can not benefit from the imposition of §§ 152 and 153, there exists no technical nor express trust and hence no "fiduciary capacity" for purposes of 11 U.S.C. § 523(a)(4). The debt is therefore dischargeable.

The final matter which requires our attention is Carey's objection to Weaver's discharge in bankruptcy, pursuant to 11 U.S.C. § 727.[6] Carey's motion for summary judgment is silent on the issue. Failing to have been presented with any facts, disputed or otherwise, the granting of a motion for summary judgment on this issue in its present posture would be inappropriate. The motion is accordingly denied.

In conclusion, finding an absence of a technical trust, Carey's motion for summary judgment on its complaint to hold the debt nondischargeable pursuant to 11 U.S.C. § 523(a)(4) shall be and hereby is, denied. Further, the sum of $14,737.61 owed to Carey by Weaver is held to be dischargeable in bankruptcy. Finally, the motion for summary judgment seeking to deny Weaver his discharge in bankruptcy shall be and hereby is, denied. An appropriate judgment shall be entered.

Pursuant to B.R. 7052 this memorandum constitutes our findings of fact and conclusion of law.

---

**5.** Section 142 establishes the requisite elements for a contractor to file a lien on the land of the owner contracted with.

**6.** Section 727 provides the grounds for the denial of a discharge in bankruptcy.