1 F.3d 1240
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
COMMONWEALTH OF KENTUCKY, ex rel. Chris GORMAN, Attorney
General, Plaintiff-Appellant,
v.
Claiborne H. KINNARD, Defendant-Appellee.
 No. 92-5890.
 United States Court of Appeals, Sixth Circuit.
 Aug. 3, 1993.
 
 Before: KEITH and NELSON, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 The Commonwealth of Kentucky, acting at the instance of its Attorney General, brought this case as an adversary proceeding in the personal bankruptcy of Kentucky resident Claiborne H. Kinnard and his wife. Mr. Kinnard was a stockbroker by trade, but he was also the principal owner and president of a corporation that provided "pre-need" funeral services and products. It is the position of the Attorney General that certain pre-need trust fund obligations of the corporation should be treated as non-dischargeable debts of Mr. Kinnard. The bankruptcy court held that the debts were dischargeable, and the district court agreed. We also agree, and we shall affirm the decision.
 
 
 2
 * Mr. Kinnard's corporation, which itself went bankrupt, was called, somewhat ironically, "Perpetual Corporation." Perpetual bought a funeral home and two cemeteries in September of 1986 and operated them until they were sold in the course of the company's bankruptcy. Through the cemeteries and funeral homes, Perpetual offered "pre-need" goods and services. Under the pre-need program, Perpetual's customers paid for funerals and/or grave sites in advance of death.
 
 
 3
 In 1984 Kentucky's legislature placed significant restrictions on companies providing pre-need funeral services and products. The relevant statutes require such companies to deposit varying percentages of their customers' pre-need payments in trust with a financial institution, to be held by the institution until the death of the designated person. For funeral services, 100 percent of the payments must be placed in trust. KY.REV.STAT.ANN. Sec. 367.934. Twenty percent must be placed in trust for perpetual grave care services, and 40 percent for cemetery merchandise. KY.REV.STAT.ANN. Secs. 367.952-.954. A person, partnership, association or corporation that receives payments for pre-need funeral services "is declared to be the agent thereof" and is charged with responsibility for depositing the payments with a financial institution that will serve as trustee. KY.REV.STAT.ANN. Sec. 367.934(1).
 
 
 4
 An investigation by the Kentucky Consumer Protection Division disclosed that seven pre-need accounts controlled by Perpetual's funeral home and cemeteries were badly underfunded. Approximately $65,000 of the underfunding resulted from a decision, approved by Mr. Kinnard, to use pre-need funeral trust funds to acquire burial annuities for Perpetual customers. The money was lost to Perpetual when the insurance agent through whom the annuities were being purchased failed to remit payment to the annuity company. Another apparent violation of law was connected with Perpetual's factoring of its accounts receivable. Perpetual made trust fund deposits only as its customers paid the factor, rather than when Perpetual was paid by the factor. (Mr. Kinnard executed the factoring agreements, but it is not clear whether he knew that Perpetual was contributing to the trusts only as payments were received by the factor.) No explanation is given for the remaining deficiencies, and Mr. Kinnard's role with respect to them is unclear. In total, however, the trust accounts were allegedly deficient by $455,000 at the time of Perpetual's bankruptcy filing.
 
 
 5
 Mr. Kinnard did not exercise day-to-day control over the company's business operations. He did, however, sign the application for Perpetual's pre-need burial license, and he did attend a Consumer Protection Division seminar at which the pre-need laws were explained.
 
 
 6
 Kentucky has a statute that imposes personal liability on officers and owners of pre-need companies, under certain circumstances, when the companies fail to comply with their statutory obligations:
 
 
 7
 "Officers, owners, directors and shareholders of companies subject to the provisions of KRS 367.932 to 367.974 and 367.991 who knew of failure to comply with any of the trust provisions of KRS 367.932 to 367.974 and 367.991 and who fail to take prompt and reasonable actions to correct, including notification to the attorney general's office, shall be personally liable, jointly and severally, for the deficiency existing in the trust funds and for any other civil remedy allowed by law." KY.REV.STAT.ANN. Sec. 367.968.
 
 
 8
 Relying on this statute, the Kentucky Attorney General sought to have Perpetual's trust fund deficiency established as a personal debt of Mr. Kinnard;[1] the Attorney General sought further to have the debt declared nondischargable under 11 U.S.C. Sec. 523(a)(4).
 
 
 9
 Section 523(a)(4) provides that a debt arising from "fraud or defalcation while acting in a fiduciary capacity" is not dischargeable in an individual's bankruptcy. The bankruptcy court determined that Mr. Kinnard did not act in a fiduciary capacity with respect to Perpetual's pre-need customers; the alleged debt was therefore held to be dischargeable. The district court affirmed that decision, and this appeal followed.
 
 II
 
 10
 To establish non-dischargeability under 11 U.S.C. Sec. 523(a)(4) when a breach of fiduciary duty is alleged, it must be shown that (1) an express trust governed the property at issue; (2) the defendant acted in a fiduciary capacity; and (3) the defendant violated his fiduciary duties by committing a defalcation. In re Interstate Agency, Inc., 760 F.2d 121, 124 (6th Cir.1985).[2]
 
 
 11
 The requirement that the trust involved be an express, or "technical," trust is derived from the leading Supreme Court case of Davis v. Aetna Acceptance Co., 293 U.S. 328 (1934):
 
 
 12
 "It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto." Id. at 333.
 
 
 13
 Under Kentucky law, pre-need payments for funeral services "are held to be trust funds" from the time of receipt by the "agent" who is supposed to deposit them with the financial institution that serves as trustee. KY.REV.STAT. Sec. 367.934(1). As far as the corporate "agent" is concerned, therefore, the Davis test is satisfied; there is an express trust that does not arise out of the wrongdoing of the corporation.
 
 
 14
 We cannot presume that Perpetual Corporation and Claiborne H. Kinnard were one and the same, however--and the question presented here is whether any personal liability on the part of Mr. Kinnard arose from a violation by him of fiduciary duties to which he personally was subject under a pre-existing express trust. On the surface, at least, there would seem to be no basis for answering this question in the affirmative. The statutory "agent" was Perpetual, not Mr. Kinnard. Any personal liability of Mr. Kinnard would appear to have arisen not from a breach of fiduciary duty on his part, but from failure to take remedial action, as required by KY.REV.STAT.ANN. Sec. 367.968, after learning of the corporation's wrongdoing.
 
 
 15
 We must consider, however, whether this court's decision in Interstate Agency, 760 F.2d 121, supra, requires a different answer. Interstate Agency arose out of the bankruptcies of a Michigan insurance agency (Interstate) and its insurance agent president, a man named Lilly. Interstate served as agent for a Wisconsin insurance company. The agency agreement, which had been signed for Interstate by Lilly, required Interstate to hold all premiums as trustee before delivering them to the insurer. Mr. Lilly also signed an individual guarantee making him jointly and severally liable for any sum owed by Interstate under its contract with the Wisconsin insurer. Interstate failed to remit premiums to the insurer, eventually falling behind by more than $123,000. The insurer filed an adversary proceeding seeking to have the debt ruled non-dischargeable as to both the agency and Mr. Lilly.
 
 
 16
 This court held the debt non-dischargeable as to Mr. Lilly. Under Michigan law, we pointed out, premium payments received by an insurance agent are considered trust funds for the benefit of the insurance company principal.[3] Because of his personal status as an insurance agent under the Michigan Code, his status as president and major shareholder of the corporate insurance agency, his personal signature on the agency agreement and guarantee, and his imputed knowledge of and responsibility for the handling of Interstate's trust undertakings, Mr. Lilly was held to be a full participant in Interstate's breach of trust.
 
 
 17
 Among the precedents on which Interstate Agency relied was Matter of Whitlock, 449 F.Supp. 1383 (W.D.Mo.1978). That case also involved an insurance agency relationship. In his capacity as president of a local agency, Mr. Whitlock signed an agency agreement with an insurance company. The court determined that the agency contract itself was enough to establish a fiduciary relationship between Mr. Whitlock and the insurer, notwithstanding that the agency conducted business as a corporation. Id. at 1390. A fiduciary duty would also have existed solely as a result of state statutes creating personal liability on the part of an agent who received premium payments meant for an insurer; the statutes applied whether or not the agency through which the agent acted was incorporated.[4] Id.
 
 
 18
 In Carey Lumber Co. v. Bell, 615 F.2d 370 (5th Cir.1980), another decision relied on in Interstate Agency, the individual bankrupt, Bell, had executed seven construction mortgages on behalf of his incorporated home construction business. Oklahoma statutes provided that monies received under a construction mortgage were to be held by the mortgagor as "trust funds for the payment of all valid lienable claims due and owing or to become due and owing by such mortgagor by reason of such building or remodeling contract." 42 OKL.STAT. Sec. 152. A separate statute provided that "[i]f the party receiving any money under Section 152 shall be a corporation, such corporation and its managing officers shall be liable for the proper application of such trust funds." 42 OKL.STAT. Sec. 153. The court held that the individual bankrupt's debt was non-dischargeable in part because Sec. 153 clearly established the existence of a fiduciary duty on Bell's part. Id. at 375, 376.
 
 
 19
 The case at bar bears a superficial resemblance to Interstate Agency, Whitlock, and Carey Lumber. Mr. Kinnard was the president and majority shareholder of Perpetual, his signature appeared on Perpetual's application for a license to sell pre-need burial services, and Kentucky law, as we have seen, imposes personal liability on corporate officers and owners, under certain circumstances, when trust fund accounts have been insufficiently funded. KY.REV.STAT.ANN. Sec. 367.968.
 
 
 20
 The Kentucky statute differs significantly, however, from the Michigan, Kansas, Missouri, and Oklahoma statutes involved in Interstate Agency, Whitlock, and Carey Lumber. The statutes at issue in Interstate Agency and Whitlock were clearly designed to impose a fiduciary duty on insurance agents. MICH.COMP.LAWS Sec. 500.1207(1) states that "an agent shall be a fiduciary" for premiums he receives. MO.REV.STAT. Sec. 375.051 speaks of an agent's "trust or fiduciary capacity" to the insurer. KAN.STAT.ANN. Sec. 40-247 directs that the agent "shall be deemed to hold such premium in trust" for the insurer. 42 OKL.STAT. Secs. 152 and 153 make corporate mortgagors and their managing officers jointly liable for the proper application of "trust funds." The Kentucky statute, by contrast, imposes liability on individual corporate officers only for failure to blow the whistle on the corporation, or take other corrective action, after the corporation has committed a defalcation; the statute does not purport to impose liability for breach of any "fiduciary" duty by the individual officer.
 
 
 21
 The statutes at issue in Interstate Agency, Whitlock, and Carey Lumber make the individual corporate officer a fiduciary at the very moment monies are turned over to his company in trust. The Kentucky statute, again, does not do that; it conditions the officer's liability on failure to take action once the officer has learned that the company has not complied with the pre-need statutes. Individual liability under the Kentucky statute is triggered only after the officer has committed a bad act--failing to report the company's wrongdoing, e.g.
 
 
 22
 This court has previously noted that "[s]tate statutes which impose a trust ex maleficio are not within the scope of section 17(a)(4) [of the Bankruptcy Act]...." In re Johnson, 691 F.2d 249, 252 (6th Cir.1982). It would seem to follow that an obligation arising ex maleficio--as any obligation incurred by Mr. Kinnard in this case did arise--should not come within the scope of Sec. 523(a)(4) of the Bankruptcy Code.
 
 
 23
 The other circumstances present in this case do not compel us to conclude that Mr. Kinnard committed a defalcation while acting in a fiduciary capacity. As an officer of the corporation he stood in a fiduciary relation to the corporation, of course, but his position was not comparable to that of an individual licensed insurance agent; he owed no fiduciary duty to third parties. Mr. Kinnard was not, in the words of Davis v. Aetna Acceptance Co., 293 U.S. at 333, supra, "a trustee before the wrong and without reference thereto."
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 The Attorney General has standing to assert the interests of Perpetual's customers. KY.REV.STAT.ANN. Sec. 367.972 vests the Attorney General with the same power to enforce the pre-need statutes that he has to enforce other consumer protection legislation. Although no statute explicitly authorizes the Attorney General to seek reimbursement on behalf of customers, the Kentucky courts have determined that KY.REV.STAT.ANN. Sec. 367.220 implicitly bestows that power. Kentucky v. ABAC Pest Control, Inc., 621 S.W.2d 705, 706-07 (Ky.Ct.App.1981)
 The Consumer Protection Division filed a claim of right during Perpetual's bankruptcy seeking $405,000 in relation to the deficient trust funds. The bankruptcy court dismissed the claim because it was not timely filed. See In re Perpetual Corp., 112 B.R. 27 (Bankr.M.D.Tenn.1990).
 
 
 [2]
 Interstate Agency was decided under Sec. 17(a)(4) of the old Bankruptcy Act, the predecessor of Sec. 523(a)(4) of the new Bankruptcy Code. Section 17(a)(4) provided that:
 "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ... [those which] (4) were created by his ... defalcation while acting as an officer or in a fiduciary capacity."
 The only change of possible substance is the deletion of any reference to an officer in Sec. 523. The Court of Appeals for the Fifth Circuit has noted that no "substantive change in the scope of the exception with regard to fiduciaries and officers was intended." Matter of Cross, 666 F.2d 873, 882 n. 14 (5th Cir.1982). See also Greenberg v. Schools, 711 F.2d 152, 155 (11th Cir.1983); M. Summers, The Exception to Discharge in Bankruptcy for Defalcation by a Fiduciary, 92 Comm.L.J. 314, 317 (Fall 1987) (noting that officer reference was omitted because an officer is a fiduciary of the corporation he serves). We therefore follow with confidence "[t]he normal rule of statutory construction ... that if Congress intends to change the interpretation of a judicially created concept, it makes that intent specific. The Court has followed this rule with particular care in construing the scope of bankruptcy codifications." Kelly v. Robinson, 479 U.S. 36, 47 (1986) (citation omitted).
 
 
 [3]
 The Michigan law defining the insurance agent's relationship to the insurer is MICH.COMP.LAWS Sec. 500.1207(1). It provides that
 "[a]n agent shall be a fiduciary for all moneys received or held by him in his capacity as an agent. Failure by an agent in a timely manner to turn over the moneys which he holds in a fiduciary capacity to the persons to whom they are owed is prima facie evidence of violation of the agent's fiduciary responsibility."
 
 
 [4]
 KAN.STAT.ANN. Sec. 40-247:
 "An insurance agent or broker who acts in negotiating or renewing or continuing a contract of insurance by an insurance company lawfully doing business in this state, and who receives any money or substitute for money as a premium for such a contract from the insured, whether he shall be entitled to an interest in same or otherwise, shall be deemed to hold such premium in trust for the company making the contract. If he fails to pay the same over to the company after written demand made upon him therefor, less his commission and any deductions, to which by the written consent of the company he may be entitled, such failure shall be prima facie evidence that he has used or applied the said premium for a purpose other than paying same over to the company, and upon conviction thereof he shall be deemed guilty of larceny and punished accordingly."
 MO.REV.STAT. Sec. 375.051:
 "Any person who shall be appointed or who shall act as agent for any insurance company within this state, or who shall, as agent, solicit applications, deliver policies or renewal receipts and collect premiums thereon, or who shall receive or collect moneys from any source or on any account whatsoever, as agent, for any insurance company doing business in this state, shall be held responsible in a trust or fiduciary capacity to the company for any money so collected or received by him for such company."